MISSISSIPPI PUBLIC SERVICE
COMMISSION, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

MISSISSIPPI POWER & LIGHT
COMPANY, Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

Nos. 75–1635, 75–1712.

United States Court of Appeals,
Fifth Circuit.

Nov. 14, 1975.

Rehearing and Rehearing En Banc
Denied Jan. 20, 1976.

Bennett E. Smith, Asst. Atty. Gen., Jackson, Miss., for petitioner Mississippi Public Service Commission.

Peyton G. Bowman, III, Richard T. Witt, Reid & Priest, Washington, D. C., for petitioner Mississippi Power & Light Co.

William J. Grealis, George W. McHenry, Jr., Sol., F. P. C., Washington, D. C., for respondent F. P. C.

Howard E. Wahrenbrick, Washington, D. C., for Mobile Gas Service Corp.

John M. Kuykendall, Jr., Jackson, Miss., for Mississippi Valley Gas Co.

William Bedwell, Washington, D. C., James H. Wuller, St. Louis, Mo., for Mississippi River Transmission Corp.

W. DeVier Pierson, Sharon, Pierson, Semmes, Crolius & Finley, Washington, D. C., for United Gas Pipe Line Co.

Platt W. Davis, III, Washington, D. C., for Texas Eastern Transmission Corp.

J. David Mann, Jr., Morgan, Lewis & Bockius, Washington, D. C., for Laclede Gas Co.

John F. Healy, Allentown, Pa., for Air Products & Chemical, Inc., and others.

Frazer F. Hilder, General Motors Corp., Detroit, Mich., for General Motors Corp.

Clayton L. Orn, Anderson, Brown, Orn & Jones, Houston, Tex., for New Orleans Public Service, Inc.

Michael J. Manning, Fulbright & Crooker, Washington, D. C., for Entex, Inc.

A. Edward Grashof, Winthrop, Stimson, Putnam & Roberts, New York City, for Mississippi Power Co.

Thomas G. Johnson, Houston, Tex., for Shell Oil Co.

Before BELL, CLARK and RONEY, Circuit Judges.

BELL, Circuit Judge:

Mississippi Public Service Commission (MPSC) and Mississippi Power and Light (MP & L) seek review of an order of the Federal Power Commission denying MPSC's petition for extraordinary relief from a curtailment plan approved by the Commission for United Gas Pipeline Co. (United).[1] The extraordinary relief was to be in the form of payments from higher to lower priority customers of United to compensate the latter for the greater costs of alternative fuels they were forced to use as a consequence of curtailment. The Commission denied relief on the ground that it lacked jurisdiction to order or approve any plan of compensation. We disagree and therefore set aside the order and remand the case to the Commission for further proceedings.

---

1. The currently effective curtailment plan for United was originally filed by United in 1971 and subsequently accepted, as modified, by the Commission in Opinion No. 606, 46 F.P.C. 786 (1971). The Commission subsequently rejected the curtailment plan of Opinion No. 606 with its Opinion No. 647, 49 F.P.C. 179 (1973) and Opinion No. 647–A, 49 F.P.C. 1211 (1973) which were reviewed by this court in *Louisiana v. FPC*, 5 Cir., 1974, 503 F.2d 844. This court found that the Commission had failed to comply with Section 5 of the Natural Gas Act in not finding the currently effective curtailment plan to be unjust and unreasonable and remanded the case to the Commission for further findings in that regard. The Commission's order on remand from this court, entered on September 6, 1974, is now pending before another panel of this court. *Louisiana Power & Light Co., et al. v. FPC*, Nos. 75–2183, 75–2339, 75–2347, 75–3057 (argued October 17, 1975).

## I

This case arises from the interaction of the increasing shortage of natural gas with the inflationary effects of the general energy crisis. Natural gas, traditionally a cheap, clean and efficient energy source, has become even more attractive as a fuel bargain in the context of today's soaring energy costs. The regulated price of natural gas in the interstate market has become disproportionately low relative to the per energy-unit costs of alternative fuels. One consequence of the increasing inability of natural gas producers to meet the demands of their customers has been the need to curtail deliveries to those customers on the basis of some equitable plan, as approved by the Federal Power Commission. Where deliveries have been curtailed, natural gas users have been forced to use alternative, more expensive fuels.

The Supreme Court has held[2] that the Commission has the authority to approve curtailment plans of natural gas producers on the basis of the Commission's jurisdiction, under Section 1(b) of the Natural Gas Act, over the transportation of natural gas in interstate commerce.[3]

The authority is subject to the statutory standard of Section 4(b) of the Act.[4] Numerous cases have arisen in the courts challenging various aspects of those plans, which allocate available natural gas on the basis of priorities determined primarily by the end use that particular customers make of the natural gas.[5] Under the usual plan, provision is made for seeking extraordinary relief where justified by exigent circumstances. The order here under review concerns such a petition.

## II

MPSC filed its petition for extraordinary relief on August 5, 1974, on behalf of the consumers served by three Mississippi electrical utilities subject to its regulation, MP & L, Mississippi Power Company (MPC), and South Mississippi Electric Power Association (SMEPA).[6] These utilities, by virtue of their "inferior" use of natural gas for boiler fuel,[7] had been given the lowest priority in United's curtailment plan, and had therefore been forced to use alternate fuels at four and five times the price of natural gas. The cost of these alternate

2. *FPC v. Louisiana Power & Light Co.*, 1972, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369.

3. Section 1(b), Natural Gas Act, 15 U.S.C.A. § 717(b) provides:

   The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas.

4. Section 4(b), Natural Gas Act, 15 U.S.C.A. § 717c(b) provides:

   No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disad-

vantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service.

5. *See e. g., Consolidated Edison Co. of New York Inc. v. FPC*, D.C.Cir., 1975, 512 F.2d 1332; *Louisiana Power & Light v. FPC, supra*; *Atlanta Gas Light Co. v. FPC*, 5 Cir., 1973, 476 F.2d 142.

6. Aside from the request for institution of a compensation plan, MPSC also requested that the electric utilities under its regulation be exempted from the curtailment of gas deliveries under the interim plan. The Commission denied this request also, but no party has chosen to appeal that denial. We therefore do not consider the issue.

7. The use of natural gas for boiler fuel is deemed "inferior" because it is the least efficient use of such fuel and because customers who make such use of natural gas can presumably most easily convert to alternative fuels.

fuels had been passed directly to their customers by the use of fuel adjustment clauses authorized by MPSC. All three utilities had firm contracts with United to supply varying amounts of natural gas, but the effect of the curtailment plan was to deny them their contractual entitlements in varying degrees.

The rationale of the relief sought by MPSC for the utilities was that the practical and economic burdens of curtailment should not fall solely on these lower priority users, but that, in order for the curtailment plan to be just, reasonable and equitable, the higher priority users should also bear some of the economic burden of curtailment. A number of parties intervened in the petition for relief, including the three Mississippi electric public utilities, Mississippi River Transmission Company (MRT) (a distributor of natural gas), and United, as the pipeline affected by any proposed plan of compensation. There were various other intervenors who are not now before the court. On October 17, 1974, the Commission granted the several interventions, but denied the relief requested by MPSC, stating:

> Assuming MPSC's allegations of fact to be correct, we conclude that the petition should be summarily dismissed for lack of jurisdiction to grant the requested relief.

The Commission supported its decision by stating that a system of compensation payments would have several unlawful effects: first, jurisdictional resale rates under such a system, i. e., by United, would not be related to the pipeline's cost of service plus a reasonable rate of return, and would therefore be in violation of the statutory standard of just and reasonable. Second, the Commission has no jurisdiction over the rates of direct sale customers, who in most instances would give or receive such compensation payments. Finally, the Commission construed the petition as being "nothing more than an attempt to obtain damages because of United's inability to deliver its full contractual commitment," a matter to be resolved only by an appropriate court.

MPSC, MP & L and MPC petitioned for rehearing, arguing that the Commission had misconstrued the request for relief. On December 4, 1974, the Commission granted the petition for purposes of further consideration, but finally denied the petition for rehearing and terminated the proceeding on February 13, 1975. The Commission noted that it had taken similar action in another but unrelated proceeding, and incorporated the reasoning in the orders in the other proceeding by reference.[8]

### III

MPSC and MP & L seek review of that final order in two appeals, No. 75–1635 and No. 75–1712, which are consolidated for review by this court. There are three intervenors: MPC sides with MPSC and MP & L in arguing that the Commission erred in finding no jurisdiction. MRT, as a high priority user who might have to make compensation payments, supports the Commission and asserts that, in effect, the lower priority customers are asking MRT to pay damages based on United's breach of contract. Finally, United supports jurisdiction in the Commission and the concept of compensation if submitted in and considered as a part of the present remand-

---

8. *Transcontinental Gas Pipe Line Co.,* FPC Docket No. RP72–99, Order Finding An Emergency On Transco's System and Denying Motion for Interim Settlement As to Curtailment Rules, November 12, 1974, and Order Granting Rehearing in Part, Denying Rehearing In Part, and Requiring Environmental Impact Statement, January 10, 1975, *pending review sub nom. Transcontinental Gas Pipe Line Corp., et al. v. F. P. C.,* D.C.Cir., Nos. 74–2036, et al. (argued May 21, 1974).

Although eschewing jurisdiction, the Commission goes further in that proceeding and seems to decide the petition for relief on the merits. We do not reach the merits, preferring to allow the Commission to reconsider the matter in light of our holding that jurisdiction exists. Moreover, any consideration on the merits in this court must be on the basis of findings made by the Commission on an adequate record.

ed curtailment proceeding or as a part of an industry-wide rule making proceeding.

MPSC and those who favor compensation argue that the Commission has jurisdiction, and the power under its jurisdiction to approve equitable curtailment plans, to impose a system of compensation payments to make such plans equitable as "pragmatic adjustments . . called for by [the] particular circumstances." *FPC v. Louisiana Power & Light Co.,* 1972, 406 U.S. 621, 642, 92 S.Ct. 1827, 1839, 32 L.Ed.2d 369, 386, *quoting FPC v. Natural Gas Pipeline,* 1942, 315 U.S. 575, 586, 62 S.Ct. 736, 86 L.Ed. 1037, 1050. The Commission, on the other hand, asserts that it has no jurisdiction to order compensation payments and moreover, if it did, such payments would be either impractical or not in the public interest.

■ The question presented is one of law: Did the Commission have jurisdiction to effectuate relief of the type sought in the petition for extraordinary relief. *See Phillips Petroleum Co. v. Wisconsin,* 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, for a similar review of a denial of jurisdiction by the Commission. Our review of the Commission's decision is guided by the principle that, while we may not order the Commission to exercise its discretion in a particular way, we may order the Commission to consider a matter that is within the jurisdiction if such be the case. *Cf. Addison v. Holly Hill Fruit Products,* 1944, 322 U.S. 607, 622, 64 S.Ct. 1215, 88 L.Ed. 1488, 1499.

We consider whether the Commission was correct in light of the language of the Supreme Court in *FPC v. Louisiana Power & Light, supra;*

Since curtailment programs fall within the FPC's responsibilities under the head of its "transportation" jurisdiction, the Commission must possess broad powers to devise effective means to meet these responsibilities. FPC and other agencies created to protect the public interest must be free, "within the ambit of their statu-

tory authority, to make the pragmatic adjustments which may be called for by particular circumstances." `FPC v. Natural Gas Pipeline Co.,* 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037, 1050 (1942). Section 16 of the Act assures the FPC the necessary degree of flexibility in providing that:

"The Commission shall have power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this Act. . . ." 15 U.S.C. § 717o.

In applying this section, we have held that "the width of administrative authority must be measured in part by the purposes for which it was conferred. . . . Surely the Commission's broad responsibilities therefore demand a generous construction of its statutory authority." (citations omitted)

406 U.S. at 642, 92 S.Ct. at 1839, 32 L.Ed.2d at 386.

It seems plain from this that the Commission is vested with both jurisdiction and broad powers to solve the problems caused by curtailment.

The Commission argues to this court that it does not have the jurisdiction to order compensation, but approaches this position in reverse. The asserted lack of jurisdiction is not because there is no statutory basis for compensation, but rather because there are effects of compensation as well as provisos within the Natural Gas Act that cumulatively preclude the implementation of compensation.

In its brief here, the Commission poses three ostensible barriers to compensation payments. They are somewhat like the reasoning given in its order denying relief. First, it asserts that compensation payments would result in discriminatory rates in violation of the statutory standard of Section 4(b) of the Natural Gas Act. 15 U.S.C.A. § 717c(b). Second, it asserts that compensation payments would in effect be sales for resale of gas in interstate commerce requiring both

certification and filing of tariff schedules. Finally, the Commission urges that the Natural Gas Act specifically excepts from the Commission's jurisdiction rate-making authority over direct sales of gas. 15 U.S.C.A. § 717(b).

■ The essential problem is that the Commission defines "rates" too broadly. By characterizing the compensation payment as either a rate in itself or a change in the rates of the natural gas company, the Commission necessarily sets up a jurisdictional barrier to compensation. It seems to us, however, that compensation payments are not "rates" but in the nature of surcharges imposed in the context of a curtailment plan to insure that the burdens of curtailment are spread evenly and equitably among those affected by such plans. Thus, the basis for the imposition of such charges is not the rate setting jurisdiction of the Commission but rather is the transportation jurisdiction of the Commission. Moreover, compensation payments are more analogous to the penalty payments included by the Commission in various curtailment plans to deal with the problem of overtakes.[9]

■ The contention that compensation payments are sales for resale requiring certification and tariff filings is also without substance. Because we do not view compensation payments as rates but rather as being in the nature of surcharges or penalties, we do not find such payments to be sales in any realistic sense of the word.

■ Our characterization of compensation payments also answers the argument of the FPC that a system of compensation would require it to exercise rate-making authority over direct sale customers. In addition, contrary to the Commission's view, the provision of the Act, Section 1(b), which denies the Commission jurisdiction over direct sales is not a limitation on the transportation jurisdiction of the Commission but rather

should be seen in the context of the original regulatory scheme envisioned by Congress of complementary federal and state regulation. See e. g., *FPC v. Transatlantic Gas Pipe Line Corp.,* 1961, 365 U.S. 1, 81 S.Ct. 435, 5 L.Ed.2d 377; *Panhandle Eastern Pipe Line Co. v. Public Service Commission of Indiana,* 1947, 332 U.S. 507, 68 S.Ct. 190, 92 L.Ed. 128; *Interstate Natural Gas Co. v. FPC,* 1947, 331 U.S. 682, 67 S.Ct. 1482, 91 L.Ed. 1742. The purpose of the proviso regarding direct sales was to allocate the regulatory powers of the Commission and the various state agencies concerned with regulating the sale of natural gas within each state. The proviso does not preclude jurisdiction over the question of compensation as here presented.

■ In sum, we conclude that the imposition of compensation payments as a condition for the receipt of higher priority gas is within the statutory power of the FPC over the movement of such gas in interstate commerce.

Having considered the breadth of the Commission's jurisdiction, the question remains what action by this court is proper. In essence, what the Commission has done is to fail to exercise its jurisdiction by refusing to consider, with an appropriate record, a proposed remedy for an asserted wrong. *Cf. NLRB v. Food Store Employees,* 1974, 417 U.S. 1, 9–10, 94 S.Ct. 2074, 40 L.Ed.2d 612, 618. We, of course, intimate no view one way or the other as to whether compensation should be included. This court can, however, compel the Commission to exercise its jurisdiction by considering whether compensation is necessary to insure the justness and reasonableness under Section 4(b) of a particular curtailment plan. *Cf. Addison v. Holly Hill Fruit Products, supra.* Whatever the result on remand, the Commission should make findings supported by an adequate record, relating to the inclusion or the failure to include compensation as a part of a curtailment plan. *Cf. Universal*

---

**9.** *See e. g.,* Panhandle Eastern Pipeline Company Tariff Schedules § 16.5, approved in 46

F.P.C. 1142, 1145 (1971); 47 F.P.C. 1567, 1569 (1972).

*Camera Corp. v. NLRB,* 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The relief sought by petitioners would require a modification of the curtailment plan now filed with the Commission. Our decision is without prejudice to the Commission considering their petitions and related pleadings, whether by way of consolidation, intervention or otherwise, as a part of the proceedings on the curtailment plan.

Set aside and remanded.