**FORT PIERCE UTILITY AUTHORITY OF the CITY OF FORT PIERCE et al., Petitioners,**

**v.**

**FEDERAL POWER COMMISSION, Respondent.**

**No. 75–1397.**

United States Court of Appeals, Fifth Circuit.

Feb. 9, 1976.

---

Robert A. Jablon, Robert C. McDiarmid, Spiegel & McDiarmid, Washington, D. C., for Fort Pierce Utility Authority and others.

George W. McHenry, Jr., Sol., F.P.C., Washington, D. C., for F.P.C.

David C. Murchison, R. David Bustard, Lee A. Monroe, Sidney & Austin, Washington, D. C., for intervenor Borden, Inc.

Richard S. Harrell, Howrey, Simon, Baker & Murchison, Washington, D. C., for intervenor Wenczel Tile Co.

Gerald W. Palmer, Jones, Day, Cockley & Reaves, Cleveland, Ohio, for intervenor Basic Magnesia, Inc.

Thomas F. Brosnan, Gallagher, Connor & Boland, Washington, D. C., R. Y. Patterson, Jr., Fla. Gas Transmission Co., Winter Park, Fla., for intervenor Florida Gas Transmission.

Charles E. McGee, McGee & Ketcham, Washington, D. C., Lawrence K. Benson, New Orleans, La., for Gardinier, Inc.

John W. Glendening, Jr., Glendening & Schmid, Washington, D. C., for Peoples Gas Co.

Ned Willis, Willis & Sackett, Perry, Iowa, for Gainesville Gas Co. and Southern Gas Co.

Before THORNBERRY, COLEMAN and MORGAN, Circuit Judges.

MORGAN, Circuit Judge:

In this case we review an order of the Federal Power Commission issued on December 9, 1974 which granted petitions for extraordinary relief [1] from an existing curtailment plan [2] of Florida Gas Transmission Company (Florida Gas). Florida Gas, due to the present gas shortage, is delivering gas to its customers pursuant to a curtailment plan filed with the FPC. Four customers, Basic Magnesia, Inc., Wenczel Tile Company, Borden Inc., and Gardinier, Inc., (the applicants) filed applications with the FPC for extraordinary relief from the curtailment plan alleging that their particular need for gas entitled them to a preference over Florida Gas' other customers. The main opponent to these applications was a group of municipally owned utilities in Florida (the Cities). The Cities argue that (1) the Commission lacked jurisdiction to grant any relief, (2) if relief was granted, the Cities were entitled to financial compensation from the applicants, and (3) not only gas that the Cities purchased from Florida Gas' own supply be allocated to the applicants, but also gas transported but not owned by Florida Gas be included in any order. The Commission rejected these arguments and granted some relief to each of the applicants. The Cities appeal. We agree that the Commission properly rejected the Cities' first and third contentions; however, we reverse the Commission on the second point and remand.

Florida Gas Transmission Company operates a gas transmission line from Texas to Central and Northern Florida. In 1959, due to expected shortages in its supply of gas, Florida Gas filed a curtailment plan as part of its tariff with the Commission. Under this plan, the customers of Florida Gas were divided into groups of firm and interruptible customers. A firm customer was one as to whom Florida Gas was bound by contract to deliver a stated amount of gas. An interruptible customer was one who had purchased gas under contract which allowed Florida Gas, under certain conditions, to temporarily cease delivery or "interrupt" the supply of gas. All firm customers were given a preference over interruptible customers. Thus, during the shortage Florida Gas would supply firm customers with gas first. The interruptible customers were further divided into two sub-groups, resale customers and direct sale customers. Resale customers were those customers who do not use gas for their own purposes but "resell" it. In contradistinction, a direct sale customer was one who purchased the gas primarily for his own needs. Within the interruptible category of customers, the resale customers were given preference over direct sale customers.

1. See FPC, Order on Petitions for Relief from Curtailment, Docket No. RP74–50–1, et al. (December 9, 1974). See also, Order Defining Procedures for filing Requests for Relief from Curtailment, Order No. 467–C, 51 FPC 1199 (1974); 18 C.F.R. 1.78(b).

2. See, Policy with Respect to the Establishment of Measures to be Taken for the Protection of as Reliable and Adequate Services as Present Natural Gas Supplies and Capabilities will Permit, Docket No. R–418, (Apr. 15, 1971) (45 FPC 570). See also, Order Approving Settlement Agreement, Amending Order Issuing Certificate of Public Convenience and Necessity, and Directing Physical Collection of Facilities and Sale of Natural Gas, (Jul. 25, 1973) (50 FPC 239).

The net result was that under Florida Gas' curtailment plan, the direct sale interruptible customers were to be curtailed first during a period of shortages. Within a group, the gas would be curtailed ratably.

Under the tariff that Florida Gas filed, the only gas which would be affected by the curtailment plan was gas which was owned by Florida Gas. Unaffected by the curtailment plan was gas which Florida Gas transported for the two major Florida utilities, Florida Power Company and Florida Power and Light Company. This gas was purchased by the utilities in Texas at the well head and transported by Florida Gas to their facilities in Florida. Although Florida Gas acted as a conduit for the gas owned by the two power companies, while the gas was in the transmission line, it was necessarily co-mingled with the gas owned by Florida Gas. The power companies would simply remove the same volume of gas in Florida as they had put in the system in Texas.

While Florida Gas operated under its curtailment plan, shortages continued to become more severe, and eventually several customers sought a special preference from the Commission by filing applications for extraordinary relief. As pointed out above, it is the granting by the Commission of four of these applications which constitute the subject matter of the present appeal. The four successful applicants argued that they needed special treatment primarily because they use gas in processes for which no reasonable substitute is available. Since the applicants are all direct sale interruptible customers, they were among the first users to be curtailed, and they alleged severe economic harm unless special relief was granted. The Cities, also direct sale interruptible customers, do not contend before this court that the applicants do not have a special need for extra gas supplies. The Cities do contend that the Commission did not have jurisdiction to grant the relief. They argue, furthermore, if the Commission did have such jurisdiction, the terms and conditions of

the relief were in violation of the Natural Gas Act.

## I.

The first question is whether the Commission had jurisdiction to grant the relief sought by the applicants. Here, the Cities rely on § 1(b) of the Natural Gas Act, 15 U.S.C. § 717(b). That section provides in relevant part:

The provisions of this act shall apply to the transportation of natural gas in interstate commerce, the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or for any other use, . . . but shall not apply to any other transportation or sale of natural gas . . .. 15 U.S.C. § 717(b).

The Cities begin their argument by pointing out that both they and the applicants are direct sale customers. Therefore, the sales involved in the FPC's order were not sales in interstate commerce of natural gas *for resale*. In short, the Cities argue that the transactions involved here are the "other" transportation or sale of natural gas to which the statute does not apply.

In *FPC v. Louisiana Power and Light*, 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1973), the Supreme Court delineated the limits of the Federal Power Commission's jurisdiction. The Court held that the FPC had jurisdiction to promulgate curtailment plans which allocated gas among customers of interstate gas transportation companies. Such curtailment plans, similar to the one instituted by Florida Gas, established priorities among all customers, both direct sale and resale, who made purchases of interstate gas. The Court came to its conclusion by pointing out the need for a national regulatory approach in curtailment problems and cautioning that Congress wished to avoid a situation where state authorities could not practicably regulate but where the Commission would be void of jurisdiction. *Id.* at 631, 92 S.Ct. 1827. See also, *FPC v. Transcontinental Gas*

*Pipeline Corp.,* 365 U.S. 1, 19–20, 81 S.Ct. 435, 5 L.Ed.2d 377 (1961). The FPC's jurisdiction to implement curtailment plans was grounded, according to the Court, in the grant of jurisdiction over the "transportation of natural gas in interstate commerce" in § 1(b) of the Act. We find *Louisiana Power and Light Co.* controlling in this case.

■ First, the national scope of the gas shortage problem is evident. What is involved in this case is not a local insufficiency of gas, but a national problem of shortages plaguing a large number of pipeline systems under the jurisdiction of the FPC. See *Mobil Oil Corp. v. FPC,* 417 U.S. 283, 331, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974); *Placid Oil Co. v. FPC,* 483 F.2d 880, 894–96 (5th Cir. 1973); *Moss v. FPC,* 164 U.S.App.D.C. 1, 502 F.2d 461, 465 (1974), cert. granted, 422 U.S. 1020, 95 S.Ct. 2642, 45 L.Ed.2d 680 (1975). Similar customers of these pipelines should be treated alike, and only the FPC has the power to insure equal treatment of various customers in different states. Being obligated to regulate in their state interest without consideration of national ramifications, state regulatory commissions are unable to deal adequately with the problems presented by curtailment. See *FPC v. Louisiana Power and Light Co., supra,* 406 U.S. at 633, 92 S.Ct. 1827. It is clear that in this case there is a need, although need alone does not create jurisdiction, for the FPC to exercise its national regulatory function.

■ The FPC, however, does have an adequate jurisdictional basis for its actions. In *Louisiana Power and Light Co., supra,* the Supreme Court held that the FPC has jurisdiction over "transportation" of gas in interstate commerce. Rejecting the argument that the FPC could only regulate gas sold for "resale," the Court held that regulation of the transportation of gas was an independent jurisdictional grant. See *American Smelting and Refining Co. v. FPC,* 161 U.S.App.D.C. 6, 494 F.2d 925, 932 (1974). While the Commission does not have the power to set rates for interstate gas

which is not sold for resale, the Commission does have power over allocations for such gas. See *Mississippi Public Service Commission v. FPC,* 522 F.2d 1345 (5th Cir. 1975), rehearing en banc denied, January 20, 1976, 526 F.2d 816.

The Cities attempt to distinguish *Louisiana Power and Light* by arguing that the present case involves only direct sales customers whereas in the case before the Supreme Court the curtailment plan affected both resale and direct sale customers. There are two difficulties, however, with the Cities' argument. First, while the immediate effect is to remove gas from one group of direct sales customers, the Cities, to another group, the applicants, there is no assurance that resale customers will not eventually be affected. Indeed, Florida Gas now contends that within a very short period it will have to curtail resale customers in order to meet its commitment to the applicants. There is no requirement that the effect on resale customers must be immediate for the Commission to have jurisdiction.

■ Yet, there is a more fundamental difficulty with the Cities' argument. The Commission has an independent grant of jurisdiction that applies to "the transportation of natural gas in interstate commerce." As the Court stated in *Louisiana Power and Light Co.,* 406 U.S. at 636, 92 S.Ct. at 1836:

Each of these is an independent grant of jurisdiction and though the Act's application to "sales" is limited to sales of interstate gas for resale, the Act applies to interstate "transportation" regardless of whether the gas transported ultimately is sold for retail or wholesale. *FPC v. East Ohio Gas Co.,* 338 U.S. 464, 468, 70 S.Ct. 266, 268, 94 L.Ed. 268 (1950).

Since it is conceded here that the gas was transported in interstate commerce, the Commission has power to require a plan of curtailment for that gas. The grant of extraordinary relief is merely altering the curtailment plan to meet the particular needs of some gas users. Even if the users immediately affected

are all direct sale customers, granting extraordinary relief is simply regulating the transportation of interstate natural gas. There is no need for the presence of resale customers for the FPC to have jurisdiction. *Cf. American Smelting and Refining Co. v. FPC, supra.*

In construing jurisdiction under the Natural Gas Act, this court must be cognizant of Congress' intent to create a comprehensive and effective regulatory scheme. See, *Panhandle Eastern Pipeline Co. v. Public Service Commission,* 332 U.S. 507, 520, 68 S.Ct. 190, 92 L.Ed. 128 (1947). The Commission, moreover, should possess flexible and adequate powers to deal with the unanticipated gas shortage problem, *Mobil Oil Corp. v. FPC, supra.* In light of these considerations, we have no difficulty in concluding that the Commission has jurisdiction to fine-tune these curtailment plans in applications for extraordinary relief as presented here. The Commission must have the power to avoid untoward results to individual customers who would be irreparably harmed by the operation of a curtailment plan which is otherwise satisfactory. *Cf. United States Steel Corp. v. FPC,* 166 U.S.App.D.C. 309, 510 F.2d 689 (1975).

## II.

The Cities' second contention is that the Commission's order naturally results in the applicants receiving gas which absent the granting of extraordinary relief would have gone to the Cities. Under these circumstances, the Cities petitioned the Commission for an order requiring financial compensation from the applicants to the Cities to reimburse the Cities for the loss of "their" gas which they would have to replace at a substantial additional cost. The Commission refused the Cities' petition on the ground that it lacked jurisdiction to

require compensation, contending that such compensation would be rate-setting for other than resale customers.

In *Mississippi Public Service Commission v. FPC, supra,* this court rejected the Commission's jurisdictional argument and remanded for consideration of the question whether a party receiving a priority in gas should be required to make compensation payments to other customers. No reason has been presented why a different result should be reached here. We wish only to reemphasize that "whatever the result on remand, the Commission should make findings supported by an adequate record, relating to the inclusion or the failure to include compensation as part of a curtailment plan." *Mississippi Public Service Commission v. FPC, supra,* at 1350. Such findings must ultimately withstand review. The Commission should present in its order explicit fact-findings to support its reasoning and include record references to demonstrate that its findings of fact have evidentiary support. *State of Louisiana v. FPC,* 503 F.2d 844, 871 (5th Cir. 1974). Since we find only that the Commission had jurisdiction to consider the Cities claim of compensation, we leave to the Commission to determine in the first instance in what type of procedure the issue of compensation should be raised.

## III.

In their final contention, the Cities maintain that the natural gas that Florida Gas transports for the two major Florida utilities, Florida Power Company and Florida Power and Light Company[3] should also be diverted to the applicants to meet their special needs. As pointed out above, this "transported gas" is not owned by Florida Gas but is merely transported by it. Since this "transported gas" has not been included in Florida Gas' curtailment plan, the two major

---

**3.** The Commission did not make Florida Power Company or Florida Power and Light Company parties in the proceedings considering extraordinary relief. The two major Florida utili-

ties did not participate in those proceedings nor did they participate in any way before this court.

utilities have continued to receive supplies even in the face of the present shortage. The Cities contend that not diverting "transported gas" constitutes a violation of the Act in that the major utilities receive an undue advantage. 15 U.S.C. § 717d. Since almost half of the gas in the Florida Gas system is "transported gas," the diversion of gas from the utilities to the applicants would substantially lessen the burden on the other direct sale customers such as the Cities caused by the Commission's grant of extraordinary relief.

The Commission does not contend that it does not have jurisdiction to order "transported gas" to be included in a curtailment program. The Commission does argue, however, that the issue was not properly raised. Pointing out that Florida Gas' curtailment plan does not include the "transported gas" and that such a plan has been in operation since 1959 without objection from the Cities, the Commission maintains that an application for extraordinary relief is not the proper proceeding to reevaluate what would be in essence the whole curtailment plan. If the Cities wish to seek an alteration of such substantial magnitude in the curtailment plan, the proper procedure, according to the Commission, would be to file a complaint pursuant to § 1.6 of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 1.6 (1975).[4] Within such a proceeding all parties could present evidence as to the issue of including "transported gas" in curtailment plans.

We think the Commission did not abuse its discretion in refusing to consider such major restructuring of the curtailment plan in proceedings dealing with applications for extraordinary relief. The courts have given expansive powers to the Commission in regard to its choice of methods of fulfilling its functions under the Act. See *Tenneco Oil Co. v. FPC*, 442 F.2d 489, 497 (5th Cir. 1971). As long as the Commission provides an adequate forum in which all interested parties may present their positions, the Commission has broad discretion in determining in what proceeding an issue will be decided. *FPC v. Sunray DX Oil Co.*, 391 U.S. 9, 50, 88 S.Ct. 1526, 20 L.Ed.2d 388 (1968). See also, *Pacific Lighting Service Co. v. FPC*, 518 F.2d 718, 720 (9th Cir. 1975). Particularly where an issue presented to the Commission has extensive ramifications in the regulation of the natural gas industry, the Commission may segregate that issue and require a separate hearing for its resolution. See *Alabama Tennessee Natural Gas Co. v. FPC*, 359 F.2d 318 (5th Cir. 1966); *Phillips Petroleum Co. v. FPC*, 405 F.2d 6, 10 (10th Cir. 1969). The Commission may also institute separate proceedings to avoid cumbersome or unduly lengthy hearings. *FPC v. Sunray DX Oil Co., supra*, at 49–50, 88 S.Ct. 1526.

In the present case, proceedings pursuant to § 1.6 would adequately protect the interest of the Cities. Such proceedings would allow all parties, including the two major utilities as well as the Cities, the opportunity to present evidence concerning "transported gas." The transported gas issue, moreover, concerns not only Florida Gas but several other pipelines under the FPC's jurisdiction. Finally, the need for an expeditious decision is evident since the appli-

---

4. Section 1.6 states in relevant part:

(a) Any person, including any state or local commission, complaining of anything done or admitted to be done by any licensee, public utility or natural gas company in contravention of an act, rule, regulation or order administered or issued by this commission, may file a complaint with the commission . . . . . If, in the judgment of the commission a violation of an act, rule, regulation or order administered or issued by this commis-

sion, has been alleged and has not adequately been satisfied it will either invite the parties to an informal conference, set the matter for a formal hearing, or take any other action which in the judgment of the commission would be appropriate. In the event that a hearing is held the complainant automatically will be a party thereto and need not file a petition for leave to intervene.

cants allege that during the next winter they would suffer severe economic harm without special relief. We feel that under all the circumstances of this case the Commission did not abuse its discretion in requiring the Cities to raise their contention concerning "transported gas" by means of an application pursuant to § 1.6.

In conclusion, we find that the Commission did not err in exercising jurisdiction to grant the applications for extraordinary relief. Secondly, the Commission was correct in refusing to decide the issue of "transported gas" in the context of these applicants' petitions. Finally, we reverse the Commission on the issue of financial compensation and remand this case for further proceedings consistent with this opinion. Petitioners' motion to adduce additional evidence is denied.

Affirmed in part; reversed and remanded in part.