**FORT PIERCE UTILITY AUTHORITY OF the CITY OF FORT PIERCE, et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 75–1397.

United States Court of Appeals, Fifth Circuit.*

Feb. 13, 1984.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Robert A. Jablon, Robert C. McDiarmid, Spiegel & McDiarmid, Washington, D.C., for Fort Pierce Utility Authority, et al.

Joel M. Cockrell, F.E.R.C., for F.E.R.C.

David T. Harvin, Houston, Tex., R.Y. Patterson, Jr., Wm. P. Diener, Wm. V. Allison, Winter Park, Fla., Thomas F. Brosnan, Gallagher, Connor & Boland, Washington, D.C., for Florida Gas Transmission Co.

Roger F. Smith, Phil W. Jordan, Washington, D.C., for Gardinier, Inc.

David C. Murchison, R. David Bustard, Lee A. Monroe, Sidney & Austin, Washington, D.C., for Borden, Inc.

Richard S. Harrell, Howrey, Simon, Baker & Murchison, Washington, D.C., for Wenczel Tile Co.

J. Lawrence Manning, Danna S. Fischer, Washington, D.C., for Basic Magnesia, Inc.

Before THORNBERRY, CHARLES CLARK and SAM D. JOHNSON, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In 1976, this court reviewed an order of the Federal Power Commission, now the Federal Energy Regulatory Commission, that granted petitions for extraordinary relief from an existing curtailment plan of Florida Gas Transmission Company (Florida Gas). *Fort Pierce Utility Authority v. F.P.C.*, 526 F.2d 993 (5th Cir.1976) (*Fort Pierce I*). Because the Commission had erroneously determined that it lacked jurisdiction to require the successful petitioners to compensate those customers of Florida Gas who received less gas than they would have absent the granting of extraordinary relief, we remanded to the Commission for a determination of whether compensation should be required.[1] *Id.* at 998. The Commission thereafter affirmed an administrative law judge's decision denying compensation. *Florida Gas Transmission Co.* (Basic Magnesia, *et al.*), Docket Nos. RP74–50–1, *et al.*, "Notice Affirming Initial Decision," 20 FERC ¶ 61,220 (1982). This appeal followed. Because the Commission's treatment of the compensation issue did not fulfill the mandate issued in *Fort Pierce I*, we remand once again.

---

1. In *Mississippi Pub. Serv. Comm'n v. F.P.C.*, 522 F.2d 1345, 1350 (5th Cir.1975), *cert. denied*, 429 U.S. 870, 97 S.Ct. 181, 50 L.Ed.2d 149 (1976), we rejected the Commission's argument that it lacked jurisdiction to consider compensation plans. This opinion was the basis of our remand in *Fort Pierce I.*

## I

Florida Gas Transmission Company operates a gas transmission line from Texas to Central and Northern Florida. In 1959, the gas company filed a curtailment plan with the Commission due to expected shortages in the supply of gas. Under this plan, Florida Gas's customers were classified as firm or interruptible customers. Firm customers were those to whom Florida Gas was bound by contract to deliver a stated amount of gas. Interruptible customers were those whose contracts allowed Florida Gas to temporarily cease delivery of gas under certain conditions. All firm customers were to be supplied with gas before interruptible customers during a shortage. Interruptible customers were further divided into two groups: resale customers—those who resell gas rather than use it for their own purposes—and direct sale customers—those who purchase gas primarily for their own needs. Resale customers were given preference over direct sale customers during shortages.

As shortages became more severe, four direct sale interruptible customers, Basic Magnesia, Inc., Wenczel Tile Company, Borden, Inc., and Gardinier, Inc., (the applicants) filed applications with the FPC for extraordinary relief from the curtailment plan. The applicants alleged that their particular need for gas entitled them to a preference over other customers of Florida Gas. In *Fort Pierce I,* we affirmed the Commission's grant of relief, rejecting the challenges raised by appellants herein, a group of municipally owned utilities in Florida (the Cities). 526 F.2d at 1000. We remanded, however, for consideration of "whether a party receiving a priority in gas [allocation] should be required to make compensation payments to other customers." *Id.* at 998. We directed the Commission to "present in its order explicit fact-findings to support its reasoning and include record references to demonstrate that its findings of fact have evidentiary support." *Id.*

While the case was on remand, the Commission found that Florida Gas's curtailment plan was unlawful as applied to direct industrial customers because it curtailed supplies without regard to end use[2] of the gas. This court affirmed in *Sebring Utilities Commission, et al., v. FERC,* 591 F.2d 1003 (5th Cir.), *cert. denied,* 444 U.S. 879, 100 S.Ct. 167, 62 L.Ed.2d 109 (1979). Thereafter, the Commission approved an interim end-use curtailment plan for Florida Gas. Opinion No. 98, *Lehigh Portland Cement Co. v. Florida Gas Transmission Co.,* Docket No. RP75–79 (Phase II), 13 FERC ¶ 61,041 (1980), *rehearing denied,* Opinion No. 98–A, *Lehigh Portland Cement Co. v. Florida Gas Transmission Co.,* Docket No. RP75–79 (Phase II), 14 FERC ¶ 61,031 (1981). The Eleventh Circuit affirmed opinions 98 and 98–A in *Cities of Lakeland, et al. v. FERC,* 702 F.2d 1302 (11th Cir.1983).

On remand of *Fort Pierce I,* the Commission affirmed the Administrative Law Judge's denial of compensation to the Cities.

## II

Before examining the Commission's reasons for its action, some observations on the nature and effect of curtailment and compensation are appropriate.

A curtailment plan is expected to have an adverse economic impact on every curtailed gas distribution company and its customers. When curtailment takes effect, the gas that would have been delivered absent curtailment must be replaced from other more expensive sources or with other more expensive fuels. The deeper the curtailment, the more severe the anticipated economic hardship becomes. However, shifting gas does not mean that economic consequences must follow, and while economic dislocations are not to be ignored, their significance is not controlling. A plan's primary goal is to achieve allocation oriented to use or contract right.

2. The "end-use" approach to curtailment ranks uses of natural gas according to their essentiality or desirability, and allocates gas first to the highest priority use, then to the next highest use, and so on down the ranking of essential or desirable uses until supplies are exhausted.

The extraordinary relief granted to the direct sale interruptible customers involved in this case is one example of means to lessen the adverse impact of curtailment. The four successful applicants for extraordinary relief argued that they needed special treatment primarily because they used gas in processes for which no substitute fuel was reasonably available. Being among the first users to be curtailed, they would therefore suffer the greatest cuts and the most severe harm absent relief. Granting them extraordinary relief carried out the basic objective of assuring that the limited supplies of gas went to the use where need was greatest. The natural result of the grant of this relief was that other direct sale customers, including the Cities, suffered deeper curtailment and had to purchase substitute, more costly fuel. The Cities urge that financial compensation from the successful applicants is the fair way to allocate the economic burden among all customers affected by end-use curtailment.

■ Our remand in *Fort Pierce I* was based on our characterization of compensation payments as "surcharges imposed in the context of a curtailment plan to insure that the burdens of curtailment are spread evenly and equitably among those affected by such plans." *Mississippi Public Serv. Comm'n v. F.P.C.*, 522 F.2d 1345, 1350 (5th Cir.1975), *cert. denied,* 429 U.S. 870, 97 S.Ct. 181, 50 L.Ed.2d 149 (1976). We did not then, and do not now, take the position that the Natural Gas Act, or its successor Natural Gas Policy Act, requires compensation to avoid undue discrimination. *Accord, Consolidated Edison Co. v. FERC,* 676 F.2d 763, 775 (D.C.Cir.1982). However, it is the Commission's responsibility to determine whether compensation is necessary to insure the justness and reasonableness of a particular curtailment plan once its end-use objectives have been accomplished.

The Commission's stated justifications for denying compensation demonstrate its failure to fulfill this responsibility. The Commission's primary assertion is that compensation is inconsistent with end-use curtailment. It argues that the grants of extraordinary relief adjusted a plan later held discriminatory because it did not curtail according to end-use. The recipients of the relief were those least able to convert to alternative fuels. For that reason, they were placed in higher priority classifications than were the Cities under the replacement end-use plan. In this context the Commission says compensation would defeat the very purpose of end-use curtailment by requiring high-priority consumers without alternatives to natural gas to contribute to lower priority consumers with many fuel alternatives. Moreover, it contends such compensation would be anomalous considering that the extraordinary relief would not have been necessary had the original plan curtailed gas supplies according to end-use.

■ The Commission's invocation of a "policy that compensation is inconsistent with end-use curtailment," is no substitute for considering whether, in this case, the Cities have proved that compensation is necessary to make the curtailment just and reasonable. Moreover, the Commission's policy justification is a non-sequitur. That compensation would require high priority consumers to contribute monetarily to lower priority consumers does not mean it would "defeat the very purpose" of end-use curtailment. End-use curtailment seeks to assure that scarce supplies of gas reach those users most in need of it. Equitable allocation of the economic burden of curtailment, sought by compensation schemes, does not necessarily thwart this basic goal. Indeed, "[b]ecause of the lasting discrimination inherent in an end-use permanent curtailment plan, the level of compensation accorded customers enduring heavier-than average curtailment is a factor bearing on the reasonableness of the plan that the Commission must consider ..." *State of North Carolina v. FERC,* 584 F.2d 1003, 1017 (D.C.Cir.1978). We therefore hold that absent proof that a compensation plan would so financially burden high priority users as to significantly impede the desired end-use of natural gas, the Commission cannot reject compensation as inconsistent with end-use curtailment.

The Commission also supports its decision by citing specific "defects" in the Cities'

compensation plan. An examination of all the purported defects reveals them to be either illusory or capable of adjustment without denying compensation altogether. For example, the Commission faults the Cities' plan for failing to seek compensation from another extraordinary relief applicant, Florida Hydrocarbons Company. However, the Cities settled their claims against Florida Hydrocarbons in a separate proceeding. The Commission also alleges that there is no guarantee that compensation payments will be passed on to the Cities' ultimate consumers. But the Cities have agreed to a flow-through condition, and have suggested administering compensation through the Florida Fuels Committee. These and other asserted defects in the plan appear to be little more than a mask for the Commission's longstanding reluctance to consider compensation plans, *see Consolidated Edison Co. v. FERC,* 676 F.2d 763, 767 (D.C.Cir. 1982); *State of North Carolina v. FERC,* 584 F.2d 1003, 1015–16 (D.C.Cir.1978).

We therefore remand this case to the Commission once again and direct it to consider, on the merits, whether compensation should be awarded the Cities to remedy any financial inequity resulting from the emergency relief.

REMANDED.