**In the Matter of GARDINIER, INC., et al., Debtor(s).**

**Bankruptcy Nos. 85–329 to 85–333.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 5, 1985.

Douglas P. McClurg, Tampa, Fla., for debtor.

Joseph C. Jacobs, in Florida, for Florida Cities.

Platt W. Davis, for Florida Gas Transmission.

Zala Forizs, for unsecured creditors committee.

Scott Strauss, in Washington, for Florida Cities.

Leonard H. Gilbert, for long term committee.

## ORDER ON MOTION TO ESTIMATE CLAIM AND OBJECTION TO MOTION BY FLORIDA CITIES

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case which brings into play a seemingly apparent conflict between § 502 and § 1126 of the Bankruptcy Code and Bankruptcy Rule 3018. This problem surfaced in a context of an Objection to a Claim filed by Gardinier, Inc., the Debtor, who attempts to effectuate a reorganization. The objection is addressed to a claim filed in the amount of $2,911,000.00 by the Fort Pierce Utilities Authority of the City of Fort Pierce, the Sebring Utilities Commission, and the cities of Gainesville, Lakeland, Starke and Tallahassee, Florida (collectively referred to as Florida Cities). Gardinier vigorously denies any liability to Florida Cities but, for the sake of expediency, proposed to reserve sufficient funds, if a plan is confirmed and the claim of Florida Cities is ultimately allowed, to pay the appropriate dividend to Florida Cities on their claim. Under this proposal Florida Cities would be paid the same dividend as other creditors in Class 4, i.e., twenty-two percent of the allowed claims or the pro-rata share of Florida Cities in the $5,000,000 fund, whichever is greater.

The factual background of the controversy between the parties is basically without dispute and can be summarized as follows:

In the early 1970's, due to the prevailing energy shortage, the Federal Energy Regulatory Commission (FERC), pursuant to the Natural Gas Act, 15 U.S.C. 717 et seq., allocated the distribution of natural gas from distributors, including Florida Gas, to various entities according to a specified scheme. Gardiner, a Florida Gas customer, applied for and was granted a special allocation by FERC because of their demonstrated need and inability to use alternative energy sources. The increase in Gardinier's supply, under the special allocation, reduced the allocation to the utilities comprising the Florida Cities group. As a result, the Florida Cities were forced to meet their needs by obtaining fuel for the operation of their plants on the open market from alternative sources at much higher prices than they would have paid for the natural gas originally allocated to them and now diverted to Gardinier.

Florida Cities, who had been aggrieved by the action, requested FERC to require Gardinier and others who obtained the same relief to compensate Florida Cities for the difference between the cost of the natural gas, which would have otherwise been available to them, and the cost of alternative fuels which Florida Cities were compelled to purchase as a result of the extraordinary relief granted to Gardinier.

This action was filed in 1974 and although there have been lengthy proceedings which ended up in the Court of Ap-

peals for enforcement three times, it is yet to be concluded. *Fort Pierce Utility Authority v. Federal Power Commission,* 526 F.2d 993 (5th Cir.1976); *Fort Pierce Utility Authority v. Federal Energy Regulatory Commission,* 724 F.2d 1167 (5th Cir. 1984); *Fort Pierce Utility Authority v. Federal Energy Regulatory Commission,* 736 F.2d 214, 215 (5th Cir.1984). FERC ultimately entered an order on July 24, 1985 and ruled that Florida Cities are entitled to recover compensation payments from parties who obtained the relief, including Gardinier. The order of FERC ordered Gardinier to calculate and to report the amount of compensation it owed to Florida Cities but stayed payment of compensation pending the conclusion of the Chapter 11 case and authorization of payment by this Court. It further appears that Gardinier entered into an agreement titled "Agreement and Mutual Release" on April 20, 1978 with Florida Gas. This agreement, in essence, although characterized by Florida Cities as an indemnity agreement, was an agreement by Florida Gas to reimburse Gardinier in the event (1) there is a final non-appealable order compelling Gardinier by pay Florida Cities compensation and (2) such compensation has, in fact, been paid.

The objection of Gardinier to the claim of Florida Cities is basically directed to two propositions advanced by Florida Cities in the Amended Proof of Claim. The first challenge is the claim of Florida Cities that their claim should not be placed in the same class with the claims of other general unsecured creditors, that is, in Class 4. Second, it is contended by Gardinier that the claim of Florida Cities is contingent, unliquidated and highly disputed, therefore, it is not allowable, thus, Florida Cities are not entitled to vote on the plan submitted by Gardinier.

 Concerning the secured status claimed by Florida Cities, Gardinier points out that its agreement with Florida Gas is not an indemnity agreement at all, but a conditional agreement by Florida Gas to reimburse Gardinier. Moreover, it is clear

that Florida Cities has no security interest in Gardinier's potential claim to a right to be reimbursed by Florida Gas because Gardinier never granted a security interest to Florida Cities or assigned any of its rights in its Agreement and Release to Florida Cities. Neither is there a statutory basis to assert any lien on this chose of action and, lastly, there has been no judicial lien placed on the same in favor of Florida Cities. For these reasons, it is quite evident that Florida Cities never acquired a cognizable security interest in Gardinier's potential claim to a right to be reimbursed by Florida Gas. Florida Cities has intimated but did not articulate very well the notion that they are in a somewhat better position than other unsecured creditors because they have some kind of equitable right to those funds. There is hardly any question that even if such right exists, which is doubtful, such claim would not be enforceable against a debtor-in-possession in Chapter 11, absent a showing that these funds were impressed by a valid trust in favor of Florida Cities, of which, of course, there is no proof in this case whatsoever.

In sum, it is evident that Florida Cities are not entitled to a treatment different than those provided for other unsecured creditors in Class 4 in the Plan of Reorganization which is now scheduled for confirmation hearing on December 16, 1985.

 This leads to the next question of whether or not Florida Cities should be entitled to vote their claim, it having been conceded by Gardinier that it is willing to reserve funds sufficient to pay the appropriate dividend to Florida Cities in the event Florida Cities ultimately prevails and their claim is allowed.

As noted earlier, Gardinier vigorously denies any liability to Florida Cities and contends that the July 19, 1985 order of FERC is not final. The fact of the matter is there is a Motion for Rehearing filed by Gardinier pending before FERC. The Motion is yet to be heard and disposed of and even if FERC ultimately denies the Motion for Rehearing on its merits, the order still will require an enforcement order by the 5th

Circuit Court of Appeals. This being the case, Florida Cities' claims, as presented by the Amended Proof of Claim, can only be allowed and entitled to vote if it meets the specific requirements of § 502 and § 1126 of the Bankruptcy Code.

Allowability of claims is dealt with by § 502, which provides in sub-clause (a) that all claims are deemed allowed, unless a party in interest objects. § 502 sub-clause (c) provides that for the purpose of allowance, any contingent or unliquidated claim cannot be allowed if the estimating or liquidating of the claim would unduly delay the administration of the estate. § 1126 deals with the right of a holder of a claim or interest to vote on a plan and to either accept or reject the plan and limits the right to vote to claims allowed pursuant to § 502 of the Bankruptcy Code. There can hardly be any doubt that a claim which is disputed on which there is any objection pending, is not yet allowed and ordinarily would not be permitted to vote on a plan of reorganization. Thus, § 1126 would, as a general proposition, furnish a satisfactory answer to the problem under consideration, except Bankruptcy Rule 3018 entitled "Acceptance or Rejection of Plans" provides, inter alia, in sub-clause (3) that notwithstanding an objection to a claim or interest, the court, after notice and hearing, may temporarily allow a claim or interest in an amount which the court deems proper for purposes of accepting or rejecting a plan. This Rule is obviously contrary to the seemingly clear provisions of the Code because it purports to give discretion to a court to permit a claim or interest to vote even though the claim is challenged and the objection is yet to be ruled on.

It needs no elaborate citation of authorities for the proposition that the rule-making power granted to the Supreme Court by 28 U.S.C. § 2075 on the subject of bankruptcy does not authorize adoption of rules which are in conflict with any Act of Congress. 28 U.S.C.A. § 2075 provides, inter alia, that "Such rules shall not abridge,

enlarge, or modify any substantive right". Pub.L. 95–598 (1978) deleted the provision of § 2075 directing that all laws in conflict with bankruptcy rules be of no further force or effect after such rules had taken effect. The effect of the deletion is that to the extent a rule is inconsistent, the statute will govern. S.Rep. No. 95–989, 95th Cong., 2d Sess. § 222 (1978).

Rule 3018 is at least facially inconsistent with § 1126 of the Bankruptcy Code. While this Court is not prepared to declare this provision of Rule 3018, which gives discretion to the court to permit an unallowed claim to vote, invalid, because of the inconsistency between § 1126 and Rule 3018, one can easily visualize a situation where it would be grossly unfair and unjust to disenfranchise any claim or interest just because the debtor interposed an objection to the allowance of the claim or interest. This is true especially in situations when the objection appears to be frivolous and without basis, and, because of time restraints, the court is not in the position to consider the objection on its merits prior to the confirmation hearing. It is not unusual in a Chapter 11 case that time is of the essence and frequently the success or failure hinges upon a prompt resolution of a debtor's right to obtain confirmation. This urgency, in turn, would not permit extensive hearings on objections to claims prior to the bar date fixed by the court for voting. To achieve justice, some discretion must be left to the court to deal with the problem just described.

This leads to the ultimate question of whether or not this Court should, in this particular instance, exercise its discretion and permit Florida Cities to vote on this plan. As noted earlier, Florida Cities' claim is placed in Class 4 of the Plan of Reorganization together with other unsecured creditors. This class is composed of more than 100 creditors representing potential allowed claims in the approximate amount of between $14,000,000 and $18,-000,000. The claim of Florida Cities rough-

ly represents 20% of the claims in this class. While Florida Cities theoretically do not have veto power because of the size of their claim, if allowed and permitted to vote, Florida Cities may have enough leverage to exert pressure on other creditors in this class and persuade them to reject the Plan, thus scuttle this reorganization proceeding, which is almost near completion. This Plan must be confirmed before the end of the year and any delay in this litigation would be fatal. The Creditor's Committee is overwhelming in favor of the Plan and so are the long-term lenders holding claims against the debtor in excess of $300,000,000, with one exception.

In light of the fact that Gardinier is willing to preserve funds to pay the appropriate dividend to Florida Cities in the event their claim is ultimately allowed with finality and in light of the fragile status of this reorganization proceeding, this Court is of the considered opinion that to exercise the discretion granted by Bankruptcy Rule 3018 would not only be improper but, in fact, would be an abuse of that discretion. For this reason, this Court is satisfied that while the claim of Florida Cities will be conditionally allowed for the purpose of sharing in the distribution if the Plan is confirmed and provided that the claim is ultimately approved, the Amended Claim # 367 of Florida Cities is disallowed for the purpose of voting and by virtue of § 1126 shall not be permitted to cast a vote on the Plan of Reorganization.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the claim filed by Florida Cities be, and the same is hereby, temporary allowed for the purpose of receiving a distribution of dividend in the event the claim is allowed and the Plan of Reorganization is confirmed. It is further

ORDERED, ADJUDGED AND DECREED that the claim of Florida Cities be, and the same is hereby, disallowed for the purpose of voting on the Plan of Reorganization.