**TENNESSEE GAS PIPELINE CO., &
East Tennessee Natural Gas
Company, Petitioners,**

v.

**FEDERAL ENERGY REGULATORY
COMMISSION, Respondent.**

No. 84–4273.

United States Court of Appeals,
Fifth Circuit.

Feb. 12, 1987.

James Howard, Terence J. Collins, Sterling H. Smith, Anthony D. Pryor, Houston, Tex., for petitioners.

John Estes, Atty., Jerome Feit, Sol., F.E.R.C., Washington, D.C., for respondent.

Bernard A. Foster, III, Washington, D.C., for Esperanza Gas Co.

W. DeVier Pierson, Knox Bemis, Elisa J. Grammer, Washington, D.C., for United Texas Transmission Co.

Thomas E. Midyett, Jr., Knoxville, Tenn., for East Tennessee Natural Gas Co.

Stan L. McLelland, M. Frazier King, Jr., Graham E. Evans, San Antonio, Tex., for Valero Transmission Co.

Before CLARK, Chief Judge, THORNBERRY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This petition for review of a Federal Energy Regulatory Commission Order requests us to determine whether East Tennessee Natural Gas Company's transportation of gas for Tennessee Gas Pipeline Company in return for Tennessee's transportation of gas to two of East Tennessee's off-system customers qualifies as a no-fee exchange of transportation services. The Commission denied no-fee status because the services were not comparable and because East Tennessee's off-system customers received the benefit of the proposed exchanges. We reverse and remand.

## I

Tennessee Gas Pipeline Company transports gas from sources in Texas, Louisiana and the outer continental shelf to markets in the midwestern and northeastern United States. East Tennessee Natural Gas Company purchases, transports and sells natural gas in the states of Tennessee and Virginia.

East Tennessee purchases 98 percent of its gas supplies from Tennessee under a take-or-pay contract that obligates East Tennessee to pay for a minimum of 66⅔ percent of the monthly component of its annual volumetric limitation. This minimum bill amount is passed on to East Tennessee's customers. In addition, East Tennessee transports gas for Tennessee from ten producers and charges Tennessee between 24.93 and 27.88 cents per Mcf for the service. Tennessee's scheduled rate for backhaul transportation was 31.47 cents per Mcf, although it was lowered to 1 cent per Mcf on July 16, 1982.

In 1981 and 1982, East Tennessee believed it could not sell enough gas to its on-system and existing off-system [1] customers to meet its minimum purchase obligations to Tennessee. To avoid take-or-pay liabilities, East Tennessee sought additional off-system customers.

### A. Houston Lighting and Power Company

In 1982 East Tennessee sought to sell natural gas off-system to Houston Lighting and Power Company. Because HL & P

---

1. An off-system customer is one outside the pipeline's traditional market area that purchases gas from the pipeline on a short-term, interruptible basis. *Natural Gas Pipeline Co.*, 27 FERC ¶ 61,235 (1984).

was not near East Tennessee's transmission system, Tennessee agreed to deliver the gas to HL & P by displacement or backhaul.[2] Tennessee and East Tennessee agreed to a "no-fee exchange" of their transportation services: Tennessee was to deliver gas by backhaul to HL & P for East Tennessee, and East Tennessee was to collect an equivalent volume of gas from Tennessee's producers and deliver it by backhaul to Tennessee. Neither company was to charge the other for transporting the gas.

Instead of charging HL & P for the value of Tennessee's transportation service and crediting the revenues to its on-system customers through Account 191, East Tennessee proposed to pass the benefit of the no-fee exchange directly to HL & P by not including the transportation tariff in the sales price of $3.89 per million Btu. Because of the sale, East Tennessee and its customers avoided $10,486,053.51 in minimum bill charges under its take-or-pay contract with Tennessee.

On June 4, 1982, Tennessee and East Tennessee filed a joint application under the Natural Gas Act, § 7(c), seeking a certificate of public convenience and necessity authorizing the no-fee exchange and the transportation and sale of natural gas to HL & P at $3.89 per million Btu. Applications under § 7(c) are usually made pursuant to 18 C.F.R. pt. 157 (1986). In this instance, however, Tennessee and East Tennessee applied for a certificate pursuant to FERC Order No. 30, 18 C.F.R. §§ 284.200–284.208 (1985), which applies to sales of gas that displace fuel oil consumption, as the sale to HL & P would. Order 30 allows expedited procedures for ex parte temporary authorizations and permanent certificates. On June 22, 1982, the Commission's Office of Pipeline and Producer Regulation issued a temporary certificate valid for 60 days authorizing the no-fee exchange and the sale to HL & P at the proposed rate.

On August 20, 1982, after hearings, the ALJ granted the permanent authorization under Order 30 to sell the gas at $3.89 per million Btu and to treat the exchange of transportation services as a no-fee exchange. *See Tennessee Gas Pipeline Co.*, 20 FERC ¶ 63,052 (1982). FERC appealed the treatment of the transaction as a no-fee exchange. The Commission consolidated the appeal with its consideration of the Trans-Louisiana Gas Company transaction.

On August 21, 1982, when the temporary certificate expired, HL & P ceased purchasing gas from East Tennessee.

### B. Trans-Louisiana Gas Company

In 1981 East Tennessee sought to sell natural gas off-system to Trans-Louisiana Gas Company. As in the HL & P sale, East Tennessee and Tennessee agreed to a no-fee exchange of transportation services: Tennessee would deliver gas by backhaul to Trans-Louisiana, and East Tennessee would deliver by backhaul an equivalent volume of gas to Tennessee. East Tennessee passed the benefit of the exchange to Trans-Louisiana by not charging Trans-Louisiana for the value of Tennessee's transportation services.

On July 6, 1981, East Tennessee filed an application under the Natural Gas Act, § 7(c), for a certificate of public convenience and necessity authorizing it to sell gas to Trans-Louisiana from July 1, 1981, to October 31, 1981, and from April 1, 1982, to October 31, 1982. The Commission temporarily authorized the sale on July 10, 1981, and, after hearings, issued a permanent certificate on March 29, 1982. The certificate did not include an authorization to transport the gas because Tennessee was to transport the gas pursuant to previous authorization under the Natural Gas Policy Act, § 311(a)(1), or an Order No. 60 certificate.

East Tennessee sold gas to Trans-Louisiana from May 28, 1982, to May 31, 1982, with Tennessee providing the transportation. Because of the sales, East Tennessee

---

**2.** In a backhaul arrangement, Tennessee takes some of the gas it would deliver to East Tennes- see and delivers it upstream to HL & P for East Tennessee's account.

avoided $799,072.00 in minimum bill charges. On July 1, 1982, Tennessee filed with the Commission an Initial Full Report disclosing that it was not charging East Tennessee for the backhaul arrangement. The Director of the Office of Pipeline and Producer Regulation rejected the no-fee transportation rate and directed Tennessee to charge East Tennessee for the service. On appeal, the Commission affirmed the Director's decision, *Tennessee Gas Pipeline Co.*, 23 FERC ¶ 61,115 (1983), but later granted rehearing to determine whether the arrangement between Tennessee and East Tennessee was a no-fee exchange, *Tennessee Gas Pipeline Co.*, 23 FERC ¶ 61,386 (1983). The rehearing was consolidated with the HL & P appeal for consideration.

### C. Opinions Nos. 208, 208–A & 208–B

In Opinion No. 208, 26 FERC ¶ 61,255 (1984), the Commission reviewed the ALJ's approval of a no-fee exchange in the HL & P transaction and also reheard arguments about whether the Trans-Louisiana transaction involved a no-fee exchange. It held that neither transaction involved a no-fee exchange because "these affiliated companies did not receive comparable values in a reciprocal relationship." The Commission held that East Tennessee's transportation service, which it valued at 24.93 to 27.88 cents per Mcf, was not comparable to Tennessee's transportation service, which was valued at 31.47 cents per Mcf. The Commission also found that the two systems did not benefit from the alleged exchanges because "the customers of Tennessee and East Tennessee would lose revenue credits to Account 191 and would subsidize HL & P and Trans-Louisiana by an equivalent amount." Thus, the benefits would flow off-system. The Commission ordered Tennessee and East Tennessee to charge each other the proper transportation rates and to credit their Accounts 191 to reflect the revenues. It also ordered East Tennessee to charge HL & P a compensatory price. *Id.*

In Opinion No. 208–A, 27 FERC ¶ 61,165 (1984), the Commission denied Tennessee and East Tennessee's joint application for rehearing and reconsideration of Opinion No. 208. It reaffirmed that the HL & P and Trans-Louisiana transactions did not involve no-fee exchanges because, even if the values exchanged were comparable, the exchange was not reciprocal; Tennessee's transportation services were for the benefit of third parties. 27 FERC at 61,302.

Tennessee and East Tennessee sought review in this court of the Commission's decisions, but then requested that we remand the case without review to the Commission to allow it to reconsider its decisions in light of *Natural Gas Pipeline Co.*, 27 FERC ¶ 61,235 (1984), *reh'g denied*, 28 FERC ¶ 61,174 (1984). We remanded the case on August 3, 1984, but the Commission in Opinion No. 208–B, 33 FERC ¶ 61,382 (1985), denied the request for reconsideration on the ground that the net benefits test used in *Natural Gas Pipeline Co.*, 27 FERC ¶ 61,235 (1984), applied only to determine whether a pipeline's off-system sale at a reduced rate was unduly discriminatory to its on-system customers. The Commission refused to extend the net benefits test from price inquiries to validate a proposed no-fee exchange. *Tennessee Gas Pipeline Co.*, 33 FERC at 61,741.

Tennessee and East Tennessee seek review of the Commission's Order pursuant to our jurisdiction granted in the Natural Gas Act, § 19(b), 15 U.S.C. § 717r(b).

### II

### A

FERC recognizes that the public interest may be served when each of two pipelines, without charge, exchanges gas or services of comparable value with the other. A common form of exchange occurs when each of two pipeline companies has gas sources remote from its own transmission system, but near the other company's system. Each pipeline, without charge, collects and uses the gas belonging to the other, while adjusting any imbalance in the

collections at a third point. *See Tennessee Gas Pipeline Co.*, 23 FERC ¶ 61,115 (1983). These exchanges benefit both pipelines by providing "a means of delivering gas supplies to their customers without the necessity of constructing and operating duplicative facilities." *Columbia Gulf Transmission Co.*, 5 FERC ¶ 61,249 (1978). Although each pipeline's customers lose the portion of the revenues from sales or transportation that is allocated to them through Account 191, the loss is offset by their not having to pay the other pipeline for its gas or services, a cost that is also allocated to the customers through Account 858. *See* 18 C.F.R. pt. 201 (1986).

■ The Commission has based no-fee exchange status on two criteria: (1) each of the two pipelines must provide a service or gas to the other, and (2) the traded or exchanged items must be comparable. This conjunctive test has been variously labeled as an inquiry into "mutual benefit," *Mississippi River Transmission Corp.*, 35 FERC ¶ 61,367 (1986), "reciprocal benefit," *Tennessee Gas Pipeline Co.*, 26 FERC ¶ 61,255 (1984), or "the trade of comparable values," *id.*, but the essence of the inquiry has not varied.

Under its test, the Commission has approved exchanges in which one pipeline transports gas from the other company's producers to a delivery point on the other company's pipeline, while the latter company transports gas from the former's producers to a separate delivery point on the former's pipeline. *See, e.g., Columbia Gulf Transmission Co.*, 24 FERC ¶ 62,374 (1983). More relevant to this case, the Commission has approved exchanges in which one pipeline delivers the gas to a third party, such as the other pipeline's customer, instead of to the other pipeline itself. *See, e.g., Michigan Wisconsin Pipeline Co.*, 18 FERC ¶ 62,457 (1982); *Panhandle Eastern Pipe Line Co.*, 12 FERC ¶ 61,159 (1980).

In contrast, when pipelines agree to an exchange without frequent balancing of services or gas traded, the Commission has required frequent balancing in order to meet the comparability aspect before approving the transaction. *See Michigan Wisconsin Pipe Line Co.*, 18 FERC ¶ 62,457 (1982). When a pipeline provides a service to another pipeline without the other pipeline also providing it a service in return, the Commission has denied no-fee exchange status because of the lack of a trade or exchange—even if the first pipeline has a net economic gain from providing the free service. *See Mississippi River Transmission Corp.*, 35 FERC ¶ 61,367 (1986).

B

Petitioners argue that the Commission applied new and varying standards to analyze their transactions, that the Commission did not adequately notify petitioners of the new facts to be asserted and the new law to be applied, and that the Commission departed from its precedent without adequately articulating reasons for its new position. We disagree.

■ At each stage of the proceedings, the Commission applied the two-pronged test it has consistently used. In the initial decision on the HL & P transaction, the ALJ determined that the petitioners were exchanging or trading backhaul services, then focused on the separate question of whether the sales rate to HL & P was compensatory. 20 FERC at 65,242. In the Order Denying Appeal of Staff Action in the Trans-Louisiana transaction, the Commission held that the petitioners were not trading services, but that only Tennessee was providing a service by bridging the gap between East Tennessee's system and Trans-Louisiana. 23 FERC at 61,271. Since the transaction failed the trade aspect of the test, the Commission did not need to discuss the comparability aspect.

In Opinion No. 208, the Commission made clear that it was applying the test it has uniformly used to analyze proposed exchanges:

Most definitions of "exchange" embody the idea of reciprocal benefit or the trade of comparable values. A review of the

facts as developed in both dockets indicate that these affiliated companies did not receive comparable values in a reciprocal relationship.

26 FERC ¶ 61,255 (1984). Contrary to petitioners' assertion, the first sentence quoted does not suggest a disjunctive test, but merely states two names or labels for the same test. The second sentence makes clear that the Commission examined both the trade or reciprocity aspect of the exchange and the comparable value aspect to determine that the transactions were not no-fee exchanges.

In Opinion No. 208–A, the Commission did not deviate from its test. Petitioners had argued on rehearing that the transactions should be certified as exchanges because comparability is not part of the test for an exchange or because the services exchanged were comparable in any event. The Commission affirmed its decision because petitioners' transactions also failed the trade or reciprocity aspect: the pipelines did not provide services for each other. Thus the argument about comparability could not affect the outcome of the case. 27 FERC at 61,302. In Opinion No. 208–B, finally, the Commission again clearly stated the test it had previously stated in Opinion No. 208 and reaffirmed that petitioners failed to satisfy the test. 33 FERC ¶ 61,-382 (1985).

In sum, the Commission did not apply a new test to petitioners' transactions, nor did it vary its standards throughout the proceedings. Because the standards were not new, petitioners had adequate notice of the facts they had to present and the law they had to satisfy.

### III

Tennessee and East Tennessee argue that the Commission's order about the alleged exchanges and the sales rate was not supported by substantial evidence. They also argue that, by failing to apply a net benefits analysis to the transactions, the Commission did not adequately consider all factors bearing on the public interest and acted inconsistently with its actions in other proceedings. We agree with the Commission that it need not apply a net benefits analysis to determine whether a transaction is a valid exchange. We nevertheless hold that the Commission's order was not supported by substantial evidence.

### A. Comparable Value

■ The Commission's findings of facts are conclusive if supported by substantial evidence. *See ICC v. Louisville & N.R.R.*, 227 U.S. 88, 94, 33 S.Ct. 185, 188, 57 L.Ed. 431 (1913); Natural Gas Act, § 19(b), 15 U.S.C. § 717r(b). The evidence establishes that East Tennessee's usual rate for the backhaul services it provided Tennessee was between 24.93 to 27.88 cents per Mcf. Tennessee's IT rate for the backhaul service to HL & P and Trans-Louisiana was 31.47 cents per Mcf until it was lowered to 1 cent per Mcf on July 16, 1982. The Commission relied principally on the rate differences to conclude that the services were not comparable. *See* Opinion No. 208, 26 FERC at 61,574. The Commission also believed that East Tennessee's rate reduction for backhauls applied "indeterminately into the future." *Id.*

■ The difference in backhaul rates does not support the Commission's finding that the services were not comparable. In backhaul transportation, no physical movement of gas occurs nor do the pipelines incur the costs associated with transportation. Thus, neither pipeline incurs more cost than the other, whatever the scheduled backhaul rates be. Furthermore, in other cases the Commission has evaluated comparability principally by examining the volumes exchanged, not by differences in rates. *See, e.g., Columbia Gulf Transmission Co.*, 24 FERC ¶ 62,374 (1983).

The record also establishes that East Tennessee did not reduce its backhaul rates "indeterminately into the future." The "Gas Transportation and Exchange Agreement" required that the volumes of gas transported by each pipeline be equal and that the no-fee arrangement end when the volumes transported are equal. Tennes-

see's witness, Mr. Hibbs, testified that a fee would again be assessed "once this exchange operation has been concluded." Mr. Hibbs also testified that the balancing in the Trans-Louisiana exchange was completed in August of 1982 and that the balancing for the HL & P would be completed "late in 1983." Thus, the filings on June 28, 1982, and May 19, 1983, in East Tennessee's Order No. 60 dockets do not reflect a permanent rate reduction as the Commission supposed, *see* Opinion No. 208, 26 FERC at 61,573–74, but reflect that East Tennessee was transporting gas under the exchange agreements.

In sum, the evidence does not support the Commission's decision that the services allegedly traded in the HL & P and Trans-Louisiana transactions were not comparable. The Commission apparently conceded that fact in Opinion No. 208–A, for it did not specifically reaffirm its holding on comparability, but rested its affirmance solely on the ground that reciprocity or trade was lacking in any event. *See* 27 FERC at 61,302. Thus, the validity of the exchanges depends on the existence of a reciprocal relationship, to which we now turn.

### B. Trade or Reciprocity

The Commission held that East Tennessee and Tennessee did not have a reciprocal relationship—they did not trade services *with each other*. The Commission found that the benefit of Tennessee's services went to HL & P and Trans-Louisiana because East Tennessee charged rates that did not compensate East Tennessee's on-system customers for Tennessee's transportation. Thus, East Tennessee provided services to Tennessee by transporting gas from Tennessee's producers without charge, and Tennessee provided services to HL & P and Trans-Louisiana by transporting gas to them without charge. Tennessee did not provide services to East Tennessee. *See* Opinion 208–A, 27 FERC ¶ 61,165.

■ Petitioners argue that reciprocal benefits existed because East Tennessee avoided take-or-pay liabilities. They argue that the Commission's decision in *Natural*

*Gas Pipeline Co.*, 27 FERC ¶ 61,235 (1984), *reh'g denied*, 28 FERC ¶ 61,174 (1984), requires an inquiry into net benefits in this case. We do not believe the public interest and Commission precedent require the Commission to apply a net benefits analysis to an exchange.

*Natural Gas Pipeline Co.* applied the net benefits analysis to determine whether a pipeline could charge a lower rate to an off-system customer than to its on-system customers. The Commission allowed a discounted price because of a net economic benefit to the pipeline and the on-system customers. *See* 27 FERC ¶ 61,235. *Natural Gas Pipeline Co.* therefore obligates the Commission to assess net benefits when evaluating off-system sales *prices*, but not when evaluating whether something is an exchange.

Application of a net benefits analysis to exchanges would completely change the Commission's long-standing theory of exchanges. To date, the Commission has required that pipelines trade services or gas *with each other* to effect an exchange. The Commission examines similar benefits that flow directly between the exchanging parties. Even when net benefits exist, the Commission has not treated something as an exchange if similar services are not directly traded. *See, e.g., Mississippi River Transmission Corp.*, 35 FERC ¶ 61,367 (1986). To require the Commission to now assess dissimilar benefits that do not flow directly between the two pipelines would not only deny the agency the deference owing it, *see Florida Power & Light v. FERC*, 598 F.2d 370, 379 (5th Cir.1979), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980), but would conflict with the very meaning of the word *exchange*. It would also require detailed examinations well beyond the capability of the expedited procedures in which exchange transactions are usually considered.

Even though the net benefits analysis does not apply to exchanges, the evidence does not support the Commission's decision that Tennessee provided its services to Trans-Louisiana and HL & P instead of to

East Tennessee. The Commission decided that Tennessee did not provide its services to East Tennessee because HL & P and Trans-Louisiana did not pay East Tennessee for Tennessee's transportation costs. Nevertheless, FERC staff has admitted during all these proceedings that the reciprocity or trade aspect of the test would be satisfied if the sale rates had been fully compensatory, for then the benefits would have remained with East Tennessee.[3] Furthermore, if the sales rate were compensatory, the transaction would be indistinguishable from exchanges that the Commission has approved. *See Panhandle Eastern Pipe Line Co.*, 12 FERC ¶ 61,159 (1980). FERC's concern is that East Tennessee is trying to disguise a discount in the form of an exchange and thereby avoid the proper and lengthier price certification procedures for off-system sales.

■ We believe the Commission erred in considering the off-system sales rate to decide whether an exchange existed, for the collapse of the rate into the exchange analysis leads to contradictory results. To illustrate, East Tennessee sought certification of both the exchange and the sales price to HL & P. The Commission held that reciprocity was lacking because the *proposed* sales price was non-compensatory, but also certified the sale to HL & P at a rate that included the transportation costs. *See* Opinion No. 208, 26 FERC ¶ 61,255. By the Commission's own reasoning and Staff's admission, when the sales price is fully compensatory (as the Commission certified), then the benefits of Tennessee's transportation remain with East Tennessee and the transaction is a valid exchange. It is contradictory for the Commission to both deny the trade aspect of the test and to say the rate certified is compensatory. A second problem is that, under *National Gas Pipeline Co.*, the net benefits analysis applies to determine whether an off-system rate is compensatory. By considering whether a rate is com-

pensatory as part of evidence on exchange, the Commission invites application of the net benefits analysis in the setting it says is unsuitable for net benefits analysis.

Contradictions are also apparent in the Trans-Louisiana transaction. The Commission had previously certified a sales price in an appropriate rate certification proceeding. *East Tennessee Natural Gas Co.*, 18 FERC ¶ 61,272 (1982). That certificate involved the Commission's determination that the rate in the certificate served the public interest—that it was compensatory to the on-system customers. If East Tennessee was charging Trans-Louisiana the certificate rate, the Commission cannot, in a proceeding that requested neither a re-examination nor enforcement of the rate, now declare that the rate is not compensatory. It is bound by its earlier determination. If the concern is that East Tennessee is not compensated for the Tennessee transportation costs because East Tennessee improperly charges a rate discounted from its certified rate, then the appropriate action is for FERC to bring a rate enforcement action requiring East Tennessee to charge its certified rate and to adjust its accounts for the benefit of its on-system customers.

We recognize FERC's concern about discounts being disguised as exchanges, and we accept FERC's argument that the exchange procedure is not the proper mechanism for obtaining approval of a discount. We merely point out that the method of preventing abuse of the exchange process that comports with FERC's own precedent and concerns is not to collapse the off-system sales rate question into the exchange question, as FERC did here, but to deal with it separately in a rate-setting procedure (as FERC was properly requested to do in the HL & P procedure) or in a rate-enforcement procedure (as FERC could have for the Trans-Louisiana sale). The exchange should be examined without considering whether the economic benefit is passed off-system.

---

**3.** *See, e.g.,* 20 FERC ¶ 63,052 ("In Staff's view the exchange agreement is not improper per se but it is inappropriate here because, in effect, Tennessee's transportation service is being paid for by East Tennessee's customers when this cost belongs to HL & P.").

■ When the off-system rate is not considered in the HL & P and Trans-Louisiana transactions, the record establishes that Tennessee and East Tennessee traded transportation services with each other. Thus, we reverse the Commission's decision and hold that the HL & P and Trans-Louisiana transactions involved no-fee exchanges.

### C. HL & P Sales Rate

We finally determine whether the Commission considered all the factors bearing on the public interest in setting the sales price to HL & P, and whether its order was supported by substantial evidence. Petitioners argue principally that the Commission did not adequately consider the benefit to the on-system customers of the avoided take-or-pay liabilities.

■ As we have noted, the net benefits analysis does not apply to evaluate whether something is an exchange, but it does apply to evaluate whether an off-system sales rate is compensatory. *See Natural Gas Pipeline Co.*, 27 FERC ¶ 61,235 (1984). In addition to seeking approval for an exchange, the application in the HL & P transaction sought certification of an off-system sales rate.[4] Thus, the Commission should have considered the avoidance of minimum bill obligations in setting the sales rate to HL & P.

The Commission mentioned the avoidance of minimum bill obligations in its discussion of public convenience and necessity in Opinion No. 208, 26 FERC at 61,576, and indicated that it did not "fully accept" the claims about the take-or-pay problems. However, this determination conflicted with substantial evidence and with the ALJ's statement that "East Tennessee's take-or-pay problems are real," 20 FERC at 65,292. In addition, the Commission's decision on the appropriate sales rate was made under the view that the transaction did not involve a no-fee exchange of transportation. Consequently, we believe the Commission should have the opportunity to reevaluate the HL & P sales rate in light of this opinion.

### IV

In conclusion, the net benefits analysis does not apply to evaluate whether a transaction is a no-fee exchange, but does apply to evaluate whether off-system sales rates discriminate against on-system customers. We hold that the HL & P and Trans-Louisiana transactions involved no-fee exchanges of services between East Tennessee and Tennessee that served the public interest. Thus, we reverse the Commission's decision denying no-fee exchange status to the two transactions, vacate the Commission's order requiring adjustments to Tennessee's and East Tennessee's Accounts 191, and remand for the Commission to enter orders in both dockets approving the no-fee exchanges and taking other action consistent with this opinion. We also vacate the Commission's determination that the sales rate to HL & P of $3.89 per million Btu is not compensatory to East Tennessee's on-system customers and remand the rate determination for the Commission to reconsider it under a net benefits analysis consistent with this opinion.

REVERSED in part, VACATED in part, and REMANDED.

---

**4.** The sales rate to Trans-Louisiana was not the subject of a certification or enforcement proceeding in the dockets on appeal and therefore cannot be examined here.