**CITIES SERVICE GAS COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 79–3393.

United States Court of Appeals, Fifth Circuit.

Aug. 11, 1980.

William J. Sears, Oklahoma City, Okl., Dale A. Wright, Gregory Grady, Washington, D.C., for Cities Service Gas Co.

Janic E. Kerr, J. Calvin Simpson, Martin A. Mattes, San Francisco, Cal., for the People of the State of California, et al.

James W. McCartney, Houston, Tex., for Transwestern Pipeline Co.

John H. Craig, III, Los Angeles, Cal., for Southern California Gas Co. and Pacific Lighting Service Co.

Jerome Nelson, Sol., Washington, D.C., A. Karen Hill, for Federal Energy Regulatory Comm.

Before CHARLES CLARK, RONEY and GARZA, Circuit Judges.

CHARLES CLARK, Circuit Judge:

Cities Service Gas Company [Cities Service] seeks review of a Federal Energy Regulatory Commission [Commission] opinion allowing Transwestern Pipeline Company [Transwestern] to alter the method by which it allocates among its customers the costs of transmitting natural gas in its system from a volume to a heat content basis. Cities Service asserts that the Commission's approval of the change in the method of allocating transmission costs violated the Administrative Procedure Act, 5 U.S.C. § 557, and did not constitute a "just and reasonable" rate as required by § 4 of the Natural Gas Act, 15 U.S.C. § 717c. We affirm.

An interstate natural gas pipeline system, Transwestern sells natural gas to two major customers, Pacific Lighting Service Company [Pacific] and Cities Service. Pacific operates as the service company for a large California distributor, and Cities Service is an interstate pipeline serving a number of states in the midwest. Transwestern obtains natural gas from two sources of supply, one located in the Panhandle area of Texas and the other in the Permian Basin in west Texas. Transmission lines from these two supply areas converge at Roswell, New Mexico, where they connect with transmission lines carrying gas west to Pacific's facilities in California. Cities Service purchases gas from the Texas Panhandle transmission line, which gas is substantially higher in BTU content than the gas produced in the west Texas area. BTU, the acronym for British Thermal Units, is a measurement of the heat producing quality of an energy product.

On March 14, 1975, Transwestern filed with the Commission revised tariff sheets proposing: (1) a general rate increase to become effective May 1, 1975; (2) a change of all gas measurements in its tariff and contracts with its customers from a volume basis to a BTU heat content basis; and (3) the alteration of the method by which it allocated costs among its customers from a volume basis to a heat content basis. Cities Service objected to Transwestern's proposal, but the Commission on April 30, 1975, accepted Transwestern's filing and permitted it to take effect, subject to refund, on October 1, 1975. Discussions related to Transwestern's rate filing resulted in a settlement of the general rate increase issue (1), but not issues (2) and (3) regarding the change to gas measurements and allocation of transmission costs based on heat content.

Pursuant to the settlement agreement, the parties submitted these issues to an administrative law judge. The ALJ ruled that the Commission was without authority to authorize the conversion of Transwestern's tariff to a BTU basis and rejected Transwestern's proposal to allocate transmission costs on a BTU basis. He found that it had not shown that the cost of transporting gas varied in any manner with its heat content. Transwestern and other parties filed with the Commission exceptions to the ALJ's initial decision. On June 25, 1979, the Commission issued Opinion No. 43, reversing the administrative law judge on both the rate conversion and cost allocation issues. On August 23, 1979, the Commission denied Cities Service's application for rehearing in Opinion No. 43–A. Cities Service then filed a petition with this court seeking a review of Opinion Nos. 43 and 43–A pursuant to § 19(b) of the Natural Gas Act, 15 U.S.C. § 717r(b). Prior to oral argument Cities Service voluntarily with-

drew from its petition for review the issue of whether Transwestern's conversion of its rates from a volume to a heat content basis was lawful.

Cities Service challenges the Commission's approval of Transwestern's allocation of its transportation costs only to the extent that it affects allocation of transmission costs associated with the operation of facilities jointly used by Cities Service and Pacific. Since Cities Service does not challenge the allocation of any costs other than these limited transmission costs, we limit our review solely to that issue.

In Opinion No. 43 the Commission based its approval of Transwestern's change from a volume to a BTU allocation basis on the elimination of undue discrimination against Pacific. It reasoned that a preference resulted from volumetric allocation of costs because Transwestern's two major sources of natural gas were of unequal BTU content, and Cities Service received a significantly greater percentage of high BTU gas due to its fortuitous location near the source producing higher BTU gas. The Commission also noted that allocation of costs on a BTU basis was consistent with its approval of the conversion of Transwestern's rates from rates based upon volumes received to rates determined by BTUs received. The real commodity being transported and sold, it reasoned, was not volumes of gas but rather energy or heating value. The allocation of costs on the basis of heat content thus would result in each of Transwestern's customers being assessed costs which related to the service that each received. It concluded that volume was not a valid basis for allocating transmission costs where the heating value of the gas delivered to individual customers substantially differed. It also determined that allocating transmission costs on a BTU basis produced rates equivalent to those that would result if the gas supplies available to Transwestern were uniform in BTU content.

Cities Service contends that the Commission's action violates the requirement of § 4(a) of the Natural Gas Act that rates be "just and reasonable," since allocation of transmission costs on a heat content basis results in higher rates to it than are warranted by the actual costs incurred by Transwestern in transmitting gas to it. It notes that the Commission acknowledges in Opinion No. 43 that transmission costs are related to the volume of the gas transported and not to its heat content. It contends that none of the evidence in the record supports the Commission's conclusion that the allocation of transmission costs on a heat content basis is reasonable. Such a method of allocation, it argues, would cause it to subsidize the costs incurred by Transwestern in transmitting gas to Pacific since Pacific would not have to pay the full costs associated with physically delivering the volumes of lower BTU content gas it receives. Finally, Cities Service argues that the Commission's approval of the new allocation plan violated the Administrative Procedure Act, 5 U.S.C. § 557, which requires that decisions of administrative agencies contain adequate findings based upon substantial evidence and constitute reasoned decision-making.

■■■ In reviewing a rate order issued by the Commission, this court examines only the end result reached and the reasoning expressed by the Commission. The Supreme Court has emphasized that "Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts. A presumption of validity therefore attaches to each exercise of the Commission's expertise." In re Permian Basin Area Rate Cases, 390 U.S. 747, 767, 88 S.Ct. 1344, 1360, 20 L.Ed.2d 312, 336 (1968). In the particular context of the allocation of costs, the Supreme Court has noted that "[a]llocation of costs is not a matter for the slide-rule. It involves judgment on a myriad of facts. It has no claim to an exact science." Colorado Interstate gas Co. v. FPC, 324 U.S. 581, 589, 65 S.Ct. 829, 833, 89 L.Ed. 1206, 1216 (1945). We must determine "(1) whether the Commission abused or exceeded its authority, (2) whether the essential elements chosen by

the Commission for the rate are supported by substantial evidence, and (3) whether the 'end result' is unjust and unreasonable." *Tenneco Oil Co. v. FERC*, 571 F.2d 834, 838 (5th Cir.), *petition for cert. dismissed*, 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978); *Shell Oil Co. v. FPC*, 520 F.2d 1061, 1070–71 (5th Cir. 1975), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2661, 49 L.Ed.2d 394 (1976). Applying this standard to the case at hand, we conclude that the Commission acted reasonably and on the basis of substantial evidence in the record in approving the allocation of Transwestern's costs on a heat content basis.

As stated, the transmission costs at issue are only those associated with the parts of Transwestern's facilities that Pacific and Cities Service use jointly. The Commission has previously determined that these transmission costs should be allocated without any consideration of the distances that the gas received by each customer has to be transmitted. *Transwestern Pipe Line Co.*, Docket No. RP 74–52 (July 25, 1977). The evidence presented to the Commission indicated that transmission costs relate directly to the volume of gas transmitted and do not vary significantly with the heat content of the gas. Yet, since the essence of the product is energy, the heat content of the gas that each customer receives determines the volume of gas that he must obtain to satisfy his daily needs. Thus, the costs associated with transmitting the gas to a customer bear a direct relationship to the BTU content of the gas that he receives.

Between 1965, when Cities Service became a customer of Transwestern, and the present day, the quantities of gas that the Commission authorized it to receive daily have more than doubled. Due to this increase in the authorized level of service to Cities Service, the percentage of the gas delivered to Pacific that originated from Transwestern's Texas Panhandle supply area has decreased. Since that gas is higher in BTU content than the gas from Transwestern's source of supply in the Permian Basin, a correlative reduction has occurred in the BTU content of the gas Pacific receives. The disparity between the BTU content of the gas Pacific receives and that received by Cities Service has increased significantly since 1965. It was to eliminate the effects of this disparity that the Commission approved the conversion of Transwestern's rate structure from rates based upon volumes of gas received to rates based upon BTUs received.

The Commission could properly conclude that both Cities Service and Pacific should pay equivalent amounts for the real commodity being sold by Transwestern, which is heating value. To prohibit Transwestern from allocating transmission costs on a BTU basis would hinder the Commission's purpose of establishing a uniform price to be paid by Transwestern's two major customers based upon the BTU content of the gas they received. The fortuitous location of Cities Service near the branch of Transwestern's pipeline system carrying gas from the Texas Panhandle area causes Cities Service to receive a greater percentage of high BTU gas. As a result Pacific requires greater volumes of gas to obtain the same amount of BTUs. Then too, the increased demands made upon the Transwestern system by Cities Service caused Pacific to receive even less of the high BTU gas originating from the Panhandle region and thus it required greater volumes of gas to obtain the BTUs it needed. If Pacific were required to pay transmission costs based upon the volumes of gas it received rather than the BTU content of those volumes, it would pay a higher price per BTU than Cities Service.

Under the particular circumstances presented by Transwestern's pipeline system, the Commission could reasonably conclude that the transmission costs associated with facilities used jointly by Transwestern's customers should be allocated on the basis of heat value received rather than volume received since such an allocation correlates with the conversion of rates to a heat content basis by further minimizing the disparity in the cost per BTU of the service received by Cities Service and Pacific.

AFFIRMED.