**BORDEN, INC., et al., Petitioners,**

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 87–4710.

United States Court of Appeals, Fifth Circuit.

Sept. 23, 1988.
Rehearing and Rehearing En Banc Denied Oct. 21, 1988.

Robert A. Jablon and Scott H. Strauss c/o Spiegel & McDiarmid, Washington, D.C., for Certain Florida Cities.

John T. Ketcham, Phil W. Jordan, Washington, D.C., for Gardinier, Inc. and Coopers & Lybrand, Trustee.

Samuel Soopper, Jerome Feit, Sol., FERC, Washington, D.C., for FERC.

Lee A. Monroe, Sidley & Austin, Washington, D.C., for Borden, Inc.

Linda Gillespie Stuntz, Mary Ellen Powers, Washington, D.C., for Basic Inc.

Platt W. Davis, III, Washington, D.C., for Florida Gas Transmission Co.

John T. Ketcham, Phil W. Jordan, Wright & Talisman, Washington, D.C., for Gardinier, Inc., et al.

Before GARZA, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioners Borden, Inc.; Basic Incorporated; Gardinier, Inc.; and Florida Gas Transmission Company seek judicial review of an order [1] of the Federal Energy Regulatory Commission directing Borden, Basic, and Gardinier to make so-called monetary payback with interest. We affirm.

## I. *Facts and Procedural History*

As explained in a previous opinion in this case:

Florida Gas Transmission Company operates a gas transmission line from Texas to Central and Northern Florida. In 1959, the gas company filed a curtailment plan with the Commission due to expected shortages in the supply of gas. Under this plan, Florida Gas's customers were classified as firm or interruptible customers. Firm customers were those to whom Florida Gas was bound by contract to deliver a stated amount of gas. Interruptible customers were those whose contracts allowed Florida Gas to temporarily cease delivery of gas under certain conditions. All firm customers were to be supplied with gas before interruptible customers during a shortage. Interruptible customers were further divided into two groups: resale customers —those who resell gas rather than use it for their own purposes—and direct sale customers—those who purchase gas primarily for their own needs. Resale customers were given preference over direct sale customers during shortages.[2]

The instant case involves a wrangling over a 1970s gas shortage, a wrangling between two groups of Florida Gas customers all within the same curtailment plan priority category of interruptible direct sale customers: three petitioning industrial customers Borden, Inc.; Basic Incorporated; and Gardinier, Inc.,[3] on the one hand, and a group of intervening municipal customers called the Florida Cities,[4] on the other hand.

In 1973, Florida Gas apparently notified some or all of its interruptible direct sale customers that an anticipated gas shortage would require that the curtailment plan

---

1. Florida Gas Transmission Co. (Basic Magnesia, Inc.), 32 Fed.Energy Reg.Comm'n Rep. (CCH) ¶ 61,120 (1985) (order granting motion), *reh'g denied*, 34 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,232, *modified*, 34 Fed.Energy Reg. Comm'n Rep. (CCH) ¶ 61,379, *clarified*, 35 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,211, *reh'g denied*, 36 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,138 (1986), *supplemented*, 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, *reh'g granted*, III Joint Appendix 4984, *reh'g denied*, 41 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,122 (1987).

2. *Fort Pierce Util. Auth. v. FERC*, 724 F.2d 1167, 1169 (5th Cir.1984).

3. We omit industrial customers, once involved, who have now fallen out of the struggle. We note that Coopers & Lybrand, Inc.—trustee in bankruptcy proceedings concerning Gardinier— was permitted to intervene, 35 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,211 (1986), and now petitioners with Gardinier.

4. Fort Pierce Utilities Authority of the City of Fort Pierce, Sebring Utilities Commission, and the Cities of Gainesville, Lakeland, Starke, and Tallahassee. Again, we omit municipal customers who have fallen out of the struggle.

filed in 1959 be put into effect. Basic, Borden, and Gardinier applied to the Commission [5] for temporary and permanent extraordinary relief from their gas allotments under the curtailment plan. Temporary relief was granted.[6] The Cities opposed the application for extraordinary relief altogether, but also urged:

> [E]ven assuming that it were in the public interest and legally permissible to upset the [Florida Gas] contracts on the grounds that Applicants were to be "preferred", there is no reason why they should get the benefit of added gas supplies without compensation to other customers in their same class. If gas is curtailed from Cities to give Applicants special relief, Cities must purchase alternate fuels, most likely on the spot market. If any gas is to be taken from Cities to the special benefit of Applicants, thereby increasing Applicants proportional allotment, then the Commission should order a condition that Applicants compensate the other customers in the preferred interruptible class the amount of additional revenues that they would have to pay for alternate fuels.[7]

The Commission later granted permanent extraordinary relief and rejected the Cities' bid for compensation.[8]

On petition for review, this Court remanded for further consideration of "the issue of financial compensation."[9] On remand, the Commission again rejected compensation.[10]

On subsequent petition for review, this Court again remanded and directed the Commission "to consider, on the merits, whether compensation should be awarded the Cities to remedy any financial inequity resulting from the emergency relief."[11] On remand, the Commission this time accepted the Cities' compensation proposal, treating it as a proposal for monetary payback upon which the grant of extraordinary relief should have been conditioned.[12] Borden, Basic, Gardinier, and Florida Gas now petition for judicial review, raising what we treat below as eight issues.

## II. *Discussion*

### A.

### *Substantive Standard*

In *Federal Power Commission v. Louisiana Power & Light Co.*,[13] the Supreme Court stated that the

---

**5.** When these proceedings began the Federal Power Commission was the responsible agency. Later, the Federal Energy Regulatory Commission became the responsible agency. *See* Florida Gas Transmission Co., 2 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,266, at 61,654 (1978) (denying protest and motion). We use the term *Commission* to describe both agencies.

**6.** Florida Gas Transmission Co. (Basic Magnesia, Inc.), 51 F.P.C. 131 (1974) (granting temporary extraordinary relief); I Joint Appendix 1859–62 (1974) (granting temporary extraordinary relief); I Joint Appendix 2003–05 (1974) (granting temporary extraordinary relief); I Joint Appendix 2008–11 (1974) (denying rehearing).

**7.** I Joint Appendix 1999.

**8.** Initial Decision on Extraordinary Relief, 52 F.P.C. 1720, *aff'd as modified,* 52 F.P.C. 1712 (1974), *reh'g and stay denied,* 53 F.P.C. 308 (1975).

**9.** *Fort Pierce Util. Auth. v. FPC,* 526 F.2d 993, 998, 1000 (5th Cir.1976).

**10.** Florida Gas Transmission Co., 2 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,266 (1978) (deny-ing protest and motion); Florida Gas Transmission Co. (Basic Magnesia, Inc.), 4 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 63,051 (1978) (initial decision on compensation), *adopted and remanded,* 8 Fed.Energy Reg.Comm'n Rep. (CCH) ¶ 61,120, *reh'g and stay denied,* 9 Fed. Energy Reg.Comm'n Rep. (CCH) ¶ 61,005 (1979), *on remand,* 14 Fed.Energy Reg.Comm'n Rep. (CCH) ¶ 63,034 (1981) (initial decision denying compensation), *aff'd,* 20 Fed.Energy Reg. Comm'n Rep. (CCH) ¶ 61,220 (1982).

**11.** *Fort Pierce Util. Auth.,* 724 F.2d at 1171; *see also Fort Pierce Util. Auth. v. FERC,* 736 F.2d 214, 215 (5th Cir.1984) ("Our remand ... is an order to give reasoned consideration to the merits of a compensation scheme").

**12.** *Supra* note 1.

**13.** 406 U.S. 621, 642–43, 92 S.Ct. 1827, 1839, 32 L.Ed.2d 369 (1972) (quoting 15 U.S.C. § 717c(b)); *see Consolidated Edison Co. of N.Y., Inc. v. FERC,* 676 F.2d 763, 773 (D.C.Cir.1982); *Sebring Utils. Comm'n v. FERC,* 591 F.2d 1003, 1009–12 (5th Cir.), *cert. denied,* 444 U.S. 879, 100 S.Ct. 167, 62 L.Ed.2d 109 (1979); *North Carolina v. FERC,* 584 F.2d 1003, 1011 (D.C.Cir.1978); *Hercules Inc. v. FPC,* 552 F.2d 74, 76 (3d Cir.

substantive standard governing [Commission] evaluation of curtailment plans is found in § 4(b) of the [Natural Gas] Act:

> "No natural-gas company shall, with respect to any transportation or sale of natural gas subject to the jurisdiction of the Commission, (1) make or grant any undue preference or advantage to any person or subject any person to any undue prejudice or disadvantage, or (2) maintain any unreasonable difference in rates, charges, service, facilities, or in any other respect, either as between localities or as between classes of service."

The same substantive standard governs Commission evaluation of applications for extraordinary relief from curtailment plans.[14] In the present case, the Commission has now determined "that the paybacks are necessary and appropriate to prevent undue discrimination prohibited by the Natural Gas Act."[15]

### Standard of Review

Petitioners seek judicial review pursuant to 15 U.S.C. § 717r. This statute provides that the "finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."[16] Beyond reviewing the findings of fact for substantial evidence, courts review Commission orders to prevent an "'arbitrary result.'"[17] In the margin, we set out the "more discriminating" criteria developed by the Supreme Court in elaboration upon the standard of review.[18] The "'ultimate issue in judicial

---

1977); *Louisiana Power & Light Co. v. FPC,* 526 F.2d 898, 902 (5th Cir.1976); *Mississippi Pub. Serv. Comm'n v. FPC,* 522 F.2d 1345, 1347 (5th Cir.1975), *cert. denied,* 429 U.S. 870, 97 S.Ct. 181, 50 L.Ed.2d 149 (1976); *Louisiana v. FPC,* 503 F.2d 844, 850–51, 867 (5th Cir.1974); *American Smelting and Ref. Co. v. FPC,* 494 F.2d 925, 932, 940–41 (D.C.Cir.), *cert. denied,* 419 U.S. 882, 95 S.Ct. 148, 42 L.Ed.2d 122 (1974).

**14.** *Hercules Inc.,* 552 F.2d at 89; *cf. American Smelting and Ref. Co.,* 494 F.2d at 940–41; *Louisiana,* 503 F.2d at 861.

**15.** 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,455.

**16.** *See Tennessee Gas Pipeline Co. v. FERC,* 809 F.2d 1138, 1143 (5th Cir.1987); *Cities of Lakeland & Tallahassee & Gainesville Regional Utils. v. FERC,* 702 F.2d 1302, 1311 (11th Cir.1983).

**17.** *In re Permian Basin Area Rate Cases,* 390 U.S. 747, 790, 88 S.Ct. 1344, 1372, 20 L.Ed.2d 312 (1968) (quoting *FPC v. Natural Gas Pipeline Co. of America,* 315 U.S. 575, 586, 62 S.Ct. 736, 743, 86 L.Ed. 1037 (1942)).

**18.** *In re Permian Basin Area Rate Cases,* 390 U.S. at 767, 790–92, 88 S.Ct. at 1360, 1372–73 (area rate proceeding):

It follows that the responsibilities of a reviewing court are essentially three. First, it must determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. Second, the court must examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Third, the court must determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

*See also Mobil Oil Corp. v. FPC,* 417 U.S. 283, 307–08, 94 S.Ct. 2328, 2345, 41 L.Ed.2d 72 (1974); *Transwestern Pipeline Co. v. FERC,* 820 F.2d 733, 738–39 (5th Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988); *New Orleans Pub. Serv., Inc. v. FERC,* 659 F.2d 509, 515 (5th Cir.1981); *Mississippi Valley Gas Co. v. FERC,* 659 F.2d 488, 502 (5th Cir.1981); *United Gas Pipe Line Co. v. FERC,* 657 F.2d 790, 794 (5th Cir.1981); *Office of Consumers' Counsel v. FERC,* 655 F.2d 1132, 1142 (D.C. Cir.1980); *Cities Serv. Gas Co. v. FERC,* 623 F.2d 1002, 1004–05 (5th Cir.1980); *Florida Power & Light Co. v. FERC,* 598 F.2d 370, 379–80 (5th Cir. 1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980); *United Gas Pipe Line Co. v. FERC,* 597 F.2d 581, 585 (5th Cir.1979), *cert. denied,* 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980); *Tenneco Oil Co. v. FERC,* 571 F.2d 834, 838–40 (5th Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978); *Superior Oil Co. v. FERC,* 563 F.2d 191, 198–201 (5th Cir.1977); *Shell Oil v. FPC,* 520 F.2d 1061, 1071 (5th Cir.1975); *cert. denied,* 426 U.S. 941, 96 S.Ct. 2660, 49 L.Ed.2d 394 (1976); *Shell Oil Co. v. FPC,* 491 F.2d 82, 85 n. 8 (5th Cir.1974); *Placid Oil Co. v. FPC,* 483 F.2d 880, 889 n. 6 (5th Cir.1973), *aff'd. sub nom. Mobil Oil Corp. v.*

review of [the Commission's] determinations' " is the " 'requirement of "reasoned consideration." ' " [19]

## B.

### 1.

■ Petitioners allege that the Commission, by speaking now in terms of monetary payback instead of compensation, has shifted the legal theory of the case and contend that this alleged shift in legal theory violates due process. We pretermit discussion of the law governing this claim because we conclude that petitioners' factual premise is faulty. In other words, we conclude that there has been no shift in legal theory.

As noted, the Cities at the outset requested that the Commission grant extraordinary relief from the curtailment plan, if at all, on the condition that those receiving more gas compensate in money those from whom the gas would be taken. The Cities used the term *compensation* to describe their request. The request placed before the Commission the issue whether the extraordinary relief sought by petitioners was unduly discriminatory toward the Cities under subsection 4(b) of the Act.

Throughout these proceedings, numerous terms have been used to describe the Cities' request: "financial[ ] compensat[ion]," [20] "[r]eimbursement," [21] "past damages," [22] "recompense," [23] and arguably "payback" [24] as well. The Commission now distinguishes between two situations: (1) recompense as a condition of a grant of extraordinary relief from a curtailment plan and (2) recompense under the curtailment plan itself. The Commission refers to extraordinary relief recompense as *payback* while referring to curtailment plan recompense as *compensation*. [25] The Cities requested extraordinary relief recompense. The Cities described their request as compensation. The Commission now calls this a request for payback. Whether called payback or compensation, the Cities' request posed from the outset the legal issue whether the extraordinary relief sought by petitioners was unduly discriminatory toward the Cities. The Commission has not shifted away from this issue, but has squarely addressed it.

### 2.

■ Petitioners contend that the Commission's order of monetary payback is not supported by reasoned consideration. We reject this contention: The Commission reasoned chiefly that the public interest required reallocation to petitioners of some of the Cities' allotment of gas under the curtailment plan, not reallocation of the gas' inexpensiveness vis-a-vis other fuels.

While alternative fuels could be employed for the ends to which the Cities put their gas, there were no such alternative fuels for petitioners' ends. With reallocation, the operations of both the Cities and petitioners could continue. Without reallocation, petitioners' operations would be shut down, and the economy would suffer. The public interest in a sound economy

*FPC,* 417 U.S. 283, 94 S.Ct. 2328, 41 L.Ed.2d 72 (1974); *Mesa Petroleum Co. v. FPC,* 441 F.2d 182, 186 (5th Cir.1971); *Southern La. Area Rate Cases v. FPC,* 428 F.2d 407, 417–18 (5th Cir.), *supplemented,* 444 F.2d 125 (5th Cir.), *cert. denied,* 400 U.S. 950, 91 S.Ct. 241, 27 L.Ed.2d 47 (1970).

**19.** *Consolidated Gas Supply Corp. v. FPC,* 520 F.2d 1176, 1185 n. 45 (D.C.Cir.1975) (quoting *Public Serv. Comm'n v. FPC,* 511 F.2d 338, 345 (D.C.Cir.1975)); *see also Office of Consumers' Counsel, Ohio v. FERC,* 783 F.2d 206, 227 (D.C. Cir.1986); *West Virginia Pub. Servs. Comm'n v. United States Dep't of Energy,* 681 F.2d 847, 853 (D.C.Cir.1982); *Tenneco Oil Co.,* 571 F.2d at 839.

**20.** 52 F.P.C. at 1721.

**21.** 52 F.P.C. at 1715 (emphasis omitted).

**22.** 2 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,266, at 61,656.

**23.** 41 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,122, at 61,302.

**24.** 4 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 63,051, at 65,371; *see* 8 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,120, at 61,444; 2 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,266, at 61,656; 52 F.P.C. at 1733, 1739; I Joint Appendix 2005.

**25.** 32 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,120, at 61,316; *see also* 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454 n. 1.

required that this injury to the economy be avoided through reallocation.

Reallocation had the collateral consequence, however, of keeping petitioners' fuel costs down because gas was then cheaper than other fuels and petitioners were permitted to pay gas prices to Florida Gas for the extraordinary relief gas received. On the other hand, the fuel costs of the Cities went up as they purchased the more expensive alternative fuels. In the words of the Commission, the public interest required reallocation of the gas because of "its physical properties, not because it was cheaper than fuel oil."[26] The public interest did not require reallocation to petitioners of the gas' "economic value,"[27] that is, its relative inexpensiveness.

In other words, because of their placement in the same curtailment plan priority category, petitioners and the Cities were generally similarly situated in their expectation of gas allotment under the plan. They were dissimilarly situated in a way countenanced by the public interest only insofar as petitioners needed the physical gas and could not use alternative fuels. By reallocating both the physical gas and its economic value to petitioners, the extraordinary relief sought (and received) by petitioners was unduly discriminatory toward the Cities. Nevertheless, extraordinary relief had in fact been granted on these terms. Consequently, in exercise of its discretion to fashion equitable remedies, the Commission found it just and reasonable to direct monetary recompense with interest as a way of making the Cities whole and avoiding unjust enrichment to petitioners.[28] Monetary recompense or payback would restore to the Cities that attribute of the gas, its economic value, whose reallocation to petitioners the public interest did not require. We conclude that the Commission has fulfilled its duty to give reasoned consideration.[29]

3.

Petitioners allege that the Commission based its payback directive on the theory that the extraordinary relief constituted a transfer of gas rights from the Cities to petitioners. Petitioners contend that this theory is legally invalid and that the payback directive must therefore fall. We pretermit discussion of the legal validity of any theory of gas rights transfer because we conclude that petitioners' factual premise is faulty. In other words, we conclude that the Commission did not rely upon a theory of gas rights transfer.

In the absence of extraordinary relief, the Cities would have received more gas. Their expectation of more gas rested on and was legitimized by provisions of the curtailment plan on file with the Commission since 1959. The grant of extraordinary relief frustrated that legitimate expec-

26. 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454.

27. 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454.

28. See 15 U.S.C. § 717o; *Louisiana Power & Light Co.*, 406 U.S. at 642, 92 S.Ct. at 1839; *United Gas Improvement Co. v. Callery Properties, Inc.*, 382 U.S. 223, 229, 86 S.Ct. 360, 364 (1965) ("An agency, like a court, can undo what is wrongfully done by virtue of its order"); *Cox v. FERC*, 581 F.2d 449, 451 (5th Cir.1978); *Mississippi Pub. Serv. Comm'n*, 522 F.2d at 1349; *Mesa Petroleum*, 441 F.2d at 186–89; *see also Consolidated Gas Transmission Corp. v. FERC*, 771 F.2d 1536, 1549–51 (D.C.Cir.1985); *Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 109 (D.C.Cir.1984); *Tennessee Gas Pipeline Co. v. FERC*, 606 F.2d 1094, 1120 (D.C.Cir.1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284, 63 L.Ed.2d 605 (1980) *and* 447 U.S. 922, 100 S.Ct. 3012, 65 L.Ed.2d 1113 (1980); *Gulf Oil Corp. v. FPC*, 563 F.2d 588, 605–10 (3d Cir.1977), *cert. denied*, 434 U.S. 1062, 98 S.Ct. 1235, 55 L.Ed.2d 762 (1978), *cert. dismissed*, 435 U.S. 911, 98 S.Ct. 1462, 55 L.Ed.2d 502 (1978); *Hercules Inc.*, 552 F.2d at 76; *American Smelting and Ref. Co.*, 494 F.2d at 932, 941. Alternatively, the present payback directive may be analyzed as another form, necessitated by the passage of time, of the original payback obligation upon which the extraordinary relief should have been conditioned. *See East Tenn. Natural Gas Co. v. FERC*, 631 F.2d 794, 800 (D.C.Cir.1980).

29. We observe that the Commission has not (or at least only partially) proceeded on a rationale of fairness. Under such a rationale, the entire burden of the Cities' increased fuel costs would not be placed upon either the Cities or petitioners. Instead, this burden would be spread among all the interruptible direct sale customers.

tation of the Cities for the benefit of petitioners. The Commission has not decided, as petitioners allege, that the extraordinary relief deprived the Cities of property interests in the gas reallocated to petitioners. The Commission has not decided, as petitioners allege, that payback is required to redress any such deprivation. Instead, it seems clear that, in order to remedy the undue discrimination toward the Cities in the grant of extraordinary relief, the Commission has required payback as a matter of equity between the Cities whose legitimate expectations were frustrated and petitioners who benefitted from that frustration.[30]

### 4.

Petitioners contend that the Commission's monetary payback order does not comport with prior Commission precedent. As noted, the Supreme Court instructs that the reviewing "court must examine the manner in which the Commission has employed the methods of regulation which it has itself selected." [31] Petitioners make two arguments here.

### a.

■ First, they argue that the Commission should have applied its precedent concerning recompense under a curtailment plan.

We observe that the Commission has two lines of authority arguably bearing upon the Cities' request for monetary recompense as a condition to extraordinary relief. One line of authority (the so-called compensation cases) tends to reject recompense *in money* to those customers whose share of gas is cut back disproportionately more under a *curtailment plan.* [32] A second and earlier line of authority (the so-called payback cases) tends to support recompense *in kind* to those customers whose share of gas is cut back under a grant of *extraordinary relief* from a curtailment plan.[33]

It may be said that neither line of authority precisely controls the present issue. The Commission chose the payback cases over the compensation cases. This choice would seem reasonable since the manner of recompense (money versus in kind) would seem a mere detail when compared to the overall context (curtailment plan recom-

---

**30.** *See Mobil Oil Corp.* 417 U.S. at 309–10, 94 S.Ct. at 2346; *cf. Columbia Gas Transmission Corp.,* 750 F.2d at 110.

**31.** *Supra* note 18; *see also Laclede Gas Co. v. FERC,* 722 F.2d 272, 275 (5th Cir.1984) ("An agency must either conform to its prior precedent or explain its reasoning for departure from that precedent"); *Shell Oil Co. v. FERC,* 664 F.2d 79, 82 (5th Cir. Unit A 1981); *Mississippi Valley Gas Co. v. FERC,* 659 F.2d 488, 506 (5th Cir. 1981); *Mitchell Energy Corp. v. FERC,* 580 F.2d 763, 765 (5th Cir.1978).

**32.** *E.g.,* Texas Eastern Transmission Corp., 12 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,129 (proposal on compensation provisions in curtailment plans), *reh'g denied,* 13 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,204 (1980), *aff'd sub nom. Consolidated Edison Co. of N.Y., Inc. v. FERC,* 676 F.2d 763 (D.C.Cir.1982).

**33.** *E.g.,* City of Blountstown, Fla., 18 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,017, at 61,024 (1982) (granting extraordinary relief); Panhandle Eastern Pipe Line Co. (Southeastern Mich. Gas Co.), 58 F.P.C. 1602, 1603–04 (1977) (denying rehearing); Panhandle E. Pipe Line Co., 56 F.P.C. 1284, 1289–90 (1976) (denying extraordinary relief); United Gas Pipe Line Co. (Util.

Comm'n, Monroe, La.), 56 F.P.C. 401, 405–09 (1976) (order on termination, repayment, and reporting); Texas E. Transmission Corp. (N. Ala. Gas Dist.), 53 F.P.C. 1480, 1482–86 (modifying extraordinary relief and denying rehearing), *stay denied,* 53 F.P.C. 1524 (1975), *clarified,* 57 F.P.C. 176 (1977); Texas E. Transmission Corp. (Carnegie Natural Gas Co.), 52 F.P.C. 1814, 1822–24 (1974) (order on extraordinary relief), *reh'g denied,* 53 F.P.C. 78, *amended,* 53 F.P.C. 220, *amended,* 53 F.P.C. 407, *clarified* 53 F.P.C. 572, *modified,* 53 F.P.C. 1260 (1975), *aff'd sub nom. United States Steel Corp. v. FPC,* 533 F.2d 1217 (D.C.Cir.1976); Texas E. Transmission Corp. (Lawrenceburg, Tenn.), 52 F.P.C. 1744, 1746 (1974) (order on emergency relief); South Ga. Natural Gas Co. (Occidental Chem. Co.), 52 F.P.C. 1511, 1513, 1515–16 (1974) (affirming modified initial decision); Southern Natural Gas Co. (Kaiser Aluminum and Chem. Corp.), 52 F.P.C. 1238, 1240–41 (1974) (affirming and adopting initial decision); Utilization and Conservation of Natural Resources—Natural Gas Act, 51 F.P.C. 1199, 1199 (1974) (order on procedures for curtailment relief requests), *reh'g denied,* 51 F.P.C. 1852 (1974); *see Hercules Inc.,* 552 F.2d at 83 & n. 46; *cf. Texas Gulf, Inc. v. FPC,* 494 F.2d 789, 792 (5th Cir.1974); Southern Natural Gas Co., 51 F.P.C. 1872, 1877–78 (1974) (approving settlement).

pense versus extraordinary relief recompense).

■ If the matter is stated most favorably to petitioners' contention, each line of authority presents an equally compelling opportunity for application by analogy. Taking this view of the case, our conclusion remains the same. Even if two lines of authority are in direct competition as applied to a particular case, it seems obvious that the Commission must have the discretion to limit one line of authority in deference to another line of authority when the two lines overlap and conflict.[34] The Commission would otherwise be powerless to proceed along either line of authority. As a court, we exercise the same power when necessity compels.[35]

Petitioners contend more fundamentally that the distinction between curtailment plan recompense and extraordinary relief recompense is unfounded and that the assertedly antirecompense policy of the Commission's compensation cases should apply across the board. If the distinction is unfounded, one might just as easily argue that the prorecompense policy of the Commission's payback cases should apply across the board.[36] We perceive, however, a reasonable basis for distinguishing between curtailment plan recompense and extraordinary relief recompense.

First, we observe that the policy of the Commission's compensation cases is not as opposed to recompense as petitioners would suggest. In an earlier opinion in this case, we described the D.C. Circuit's treatment of the Commission's compensation cases as holding "that the Commission's decision that compensation was unnecessary was not arbitrary" when, among other things, "economic losses to those curtailed would be partially offset by ratemaking treatment."[37] In the present case, the parties have presented no mechanism (besides payback) by which the Cities' loss

---

**34.** *See In re Permian Basin Area Rate Cases,* 390 U.S. at 784, 88 S.Ct. at 1369; *Laclede Gas Co.,* 722 F.2d at 275; *Shell Oil Co.,* 664 F.2d at 82; *New Orleans Pub. Serv.,* 659 F.2d at 523; *Mississippi Valley Gas Co.,* 659 F.2d at 506–07; *United Gas Pipe Line Co.,* 657 F.2d at 797; *United Gas Pipe Line Co. v. FERC,* 649 F.2d 1110, 1115 (5th Cir.1981); *Mitchell Energy Corp.,* 580 F.2d at 765; *see also Public Serv. Comm'n v. FERC,* 813 F.2d 448, 451 (D.C.Cir.1987); *United Mun. Distribs. Group v. FERC,* 732 F.2d 202, 210 (D.C. Cir.1984); *North Penn Gas Co. v. FERC,* 707 F.2d 763, 767 (3d Cir.1983); *Hatch v. FERC,* 654 F.2d 825, 834 (D.C.Cir.1981); *Columbia Gas Transmission Corp. v. FERC,* 628 F.2d 578, 585–86 (D.C.Cir.1979); *Public Serv. Co. of Ind., Inc. v. FERC,* 584 F.2d 1084, 1087–88 (D.C.Cir.1978); *Boston Edison Co. v. FPC,* 557 F.2d 845, 884–49 (D.C.Cir.), *cert. denied,* 434 U.S. 956, 98 S.Ct. 482, 54 L.Ed.2d 314 (1977); *Koch Indus., Inc. v. FPC,* 554 F.2d 1158, 1162 (D.C.Cir.1977); *Consolidated Gas Supply Corp.,* 520 F.2d at 1185; *Public Serv. Comm'n,* 511 F.2d at 353; *Atlantic Seaboard Corp. v. FPC,* 404 F.2d 1268, 1273 (D.C.Cir.1968); *City of Chicago v. FPC,* 385 F.2d 629, 637–38 (D.C.Cir.1967), *cert. denied,* 390 U.S. 945, 88 S.Ct. 1028, 19 L.Ed.2d 1133 (1968).

**35.** *See generally Johnson v. Moral,* 843 F.2d 846, 847–48 (5th Cir.), *reh'g en banc granted, id.* at 849 (5th Cir.1988); *United States v. Gray,* 751 F.2d 733, 735 (5th Cir.1985).

**36.** Petitioners' contention presents some difficulty for a reviewing court. If the Commission's own compensation and payback cases are in conflict and if the Commission has the power

to prefer one line of cases over another (as we have already determined it does) then our inquiry might simply end with the conclusion that the Commission has not acted arbitrarily in preferring to apply its payback cases by analogy to the instant case.

To petitioners' further contention that the assertedly antirecompense policy of the compensation cases cannot coexist with the prorecompense policy of the payback cases, we might then simply respond that this contention would be better addressed, not in the present case concerning extraordinary relief recompense, but in the next case presenting the issue of curtailment plan recompense. We resist making this response because it could forever preclude review while the issue is passed back and forth between the payback and compensation cases. *Cf. Orr v. Orr,* 440 U.S. 268, 271–73, 99 S.Ct. 1102, 1107–08, 59 L.Ed.2d 306 (1979).

Since the Commission has made clear its intention to retain both the policy of its payback cases and the policy of its compensation cases, each within its own scope of application, petitioners' assertion of irreconcilability between the two lines of authority is properly before us. If found to be irreconcilable, the proper course would seem to be a remand directing the Commission to explain away the judicially perceived irreconcilability or to choose between the two policies. *See Carolina Power & Light Co. v. FERC,* 716 F.2d 52, 56 (D.C.Cir.1983). As we conclude below, however, the two lines of authority are not irreconcilable.

**37.** *Fort Pierce Utility Auth.,* 736 F.2d at 214.

through increased fuel costs was or will be offset whether in part or in full.

■ Second, the necessity for recompense may arise when one party benefits through the frustration of the *justifiable* reliance or *legitimate* expectation of another party. In the case of curtailment plans, the argument in favor of recompense draws upon the circumstance that each customer has "equivalent contractual rights." [38] This argument does not compel recompense as a matter of restitution because these contractual rights were always subject to being overriden by the Commission in the public interest [39] and there was no already established policy assuring like treatment of those with equivalent contractual rights in the event of any such overriding. In the case of extraordinary relief, on the other hand, the argument in favor of recompense is stronger because the curtailment plan itself holds out that customers within the same curtailment plan priority category will be treated alike.

Recompense may therefore be unnecessary when a curtailment plan goes into effect because those incurring disproportionately greater curtailment had fair warning, and thus no legitimate expectations have been frustrated by the plan. A grant of extraordinary relief, on the other hand, is premised upon the unforeseeable; it departs from expected events.[40] Recompense may be necessary when the curtailment plan is in effect altered through a grant of extraordinary relief because those incurring disproportionately greater curtailment such as the Cities had no fair warning, and thus legitimate expectations have been frustrated by the extraordinary relief.[41] The need for extraordinary relief recompense may be even stronger when the curtailment plan, as in the present case, has been on file for a long time.

The reasonable basis we piece together above to distinguish between curtailment plan recompense and extraordinary relief recompense was not directly offered by the Commission. Nevertheless, in light of the lengthy history of these proceedings, we must "strive for finality." [42] Since this basis was available to the Commission and appears in the periphery of the Commission's own consideration, we conclude in light of special need for finality that our standard of review is satisfied.

b.

Second, petitioners observe that the Commission's payback cases, if applicable, are themselves inconsistent. While some of these cases require payback, others do not. Petitioners contend that the cases that do not require payback should be applied to

---

38. *Consolidated Edison Co. of N.Y., Inc.,* 676 F.2d at 773. Curtailment plan recompense argues *fairness* most persuasively: The public interest has necessitated disproportionate allocation of the gas, not the financial consequences of curtailment, and since curtailment itself is necessitated by circumstances beyond the control of all concerned, fairness dictates that the financial consequences of curtailment should be spread among all concerned on some proportionate basis—perhaps the equivalency of their contractual rights. Extraordinary relief recompense may argue fairness, but it may also argue *restitution:* Those incurring disproportionately greater curtailment because of extraordinary relief had a legitimate expectation of curtailment according to the plan, and there should restitution *to remedy frustration* of this expectation. Both kinds of recompense may argue *unjust enrichment:* Those enjoying disproportionately less curtailment necessitated by the public interest have no stronger private claim to this preferred treatment than do those incurring disproportionately greater curtailment.

39. *United Gas Pipe Line Co. v. FERC,* 824 F.2d 417, 427 (5th Cir.1987); *see In re Permian Basin Area Rate Cases,* 390 U.S. at 784, 88 S.Ct. at 1368–69; *Louisiana,* 503 F.2d at 858.

40. *See* I Joint Appendix 2009–10; *United States Steel Corp.,* 533 F.2d at 1221; *Southern Cal. Edison Co. v. FPC,* 524 F.2d 409, 415–16 (D.C.Cir. 1975).

41. *See, e.g.,* 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454 n. 4 (payback " 'is but simple restitution due those *who were rightfully entitled* to the use of the gas' " (quoting *United States Steel Corp.,* 533 F.2d at 1224) (emphasis supplied)); Texas E. Transmission Corp. (Carnegie Natural Gas Co.), 52 F.P.C. at 1822 (a "payback provision," among other things, "partially *restores volumes taken from other customers* " (emphasis supplied)).

42. *Mechanical Wholesale, Inc. v. Universal-Rundle Corp.,* 432 F.2d 228, 229 (5th Cir.1970).

the present case. We reject this contention.

Clearly, there is Commission precedent for the general principle that payback in kind is available to one who incurs greater gas curtailment because of the grant of extraordinary relief to another.[43] The Commission attempted to distinguish its less frequent cases tending to depart from this principle.[44] Moreover, the Commission intimated that each payback case is of limited precedential value because "predicated on its own individual factual circumstances and a decision was made, usually on equitable grounds, whether payback should or should not be required."[45] Finally, if the matter is stated most favorably to petitioners' contention, the Commission's payback cases are in direct conflict with one another. Taking this view of the matter, our conclusion remains the same. As noted, the Commission must have the power to prefer one line of cases over another when its cases are in conflict. Here, the Commission has indicated that, to the extent some of its past cases may be interpreted as rejecting payback, the Commission would today not agree with those cases.[46] We conclude that the Commission has given reasoned consideration to its past payback cases.

### 5.

■ Petitioners observe that the Commission ultimately determined that the underlying curtailment plan itself was unduly discriminatory.[47] Petitioners allege that they would have received a greater allocation of gas under a hypothetical nondiscriminatory curtailment plan. To the extent they would have received more gas under the hypothetical plan, they would allegedly have needed less gas, if any, under a grant of extraordinary relief.[48] Petitioners observe that the instant payback directive requires monetary payback from them to the extent the Cities incurred increased fuel costs because of the extraordinary relief gas in fact reallocated from the Cities to petitioners. Petitioners impliedly conclude that there should be payback only to the lesser extent petitioners would have needed extraordinary relief gas if the hypothetical plan had been in effect. They contend that the Commission, by failing to implement this conclusion, acted contrary to the case of *Hercules Incorporated v. FPC.*[49] We reject this contention.

In *Hercules*, extraordinary relief from a curtailment plan was granted on a condition of payback in kind. Later, the Commission rejected the curtailment plan itself. Nevertheless, the Commission would not allow Hercules, recipient of the extraordinary relief gas, to receive gas under the new curtailment plan until it discharged the payback obligations. On petition for review, the Third Circuit held the payback obligations to be "unenforceable":

> In enforcing Hercules' payback obligations the [Commission] is now prospectively curtailing Hercules' entitlements to gas in a manner which gives continuing effect to the features of [the] plan which it has held to be illegal. Requiring payback obligations assumes that the party seeking relief is not entitled to the emergency volumes of gas. However, the system of entitlements can be no more valid than the curtailment plan. The power of the [Commission] to enforce payback obligations cannot extend beyond its power to impose the underlying curtailment plan which gives rise to

---

**43.** *Supra* note 33.

**44.** 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454–55.

**45.** 41 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,122, at 61,302.

**46.** 40 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,143, at 61,454.

**47.** *See Sebring Utils. Comm'n,* 591 F.2d at 1008.

**48.** Petitioners proffer no allegation concerning the volume of gas allocated to the Cities under the hypothetical plan and whether gas reallocated under a grant, if any, to petitioners of extraordinary relief from such a plan would have been gas otherwise allocated to the Cities under the plan.

**49.** 552 F.2d 74 (3d Cir.1977).

the obligations. Enforcing such obligations after a finding that they were imposed as a result of an unlawful curtailment priority distinction is an abuse of discretion.[50]

In the present case, the Commission distinguished *Hercules.* In *Hercules,* the curtailment plan had been filed under section 4 of the Natural Gas Act [51] whereas the instant plan had already been filed and in effect as a tariff. The Commission's rejection of the plan in *Hercules* had operated "reflexively back to the initial date" of plan operation whereas the determination rejecting the instant plan (a determination reached after petitioners had stopped receiving extraordinary relief gas) had been without such retroactive effect.[52] Indeed, the plan in the present case was allowed to continue in effect until replaced with another plan.[53]

Petitioners have not challenged the Commission's understanding of the prospective nature of the determination overturning the instant curtailment plan.[54] Thus, unlike the *Hercules* case, the curtailment plan from which the instant extraordinary relief departed remained intact and "valid" [55] throughout the period when petitioners were receiving extraordinary relief gas. This is a fine distinction, but a reasonable one; in light of the practical complexities facing it and the numerous interests it must accommodate,[56] the Commission should be able to build upon filed tariffs that remain intact and its own past determinations. For the present purposes, the curtailment plan remained intact and valid throughout the period at issue and has not been challenged in the present proceedings.[57]

6.

The Cities long ago brought and then settled a court action for damages to compensate for shortfalls in gas deliveries because of extraordinary relief. Petitioners allege that the settlement amount redressed the same injury to the Cities as the injury redressed by the instant payback directive. Petitioners contend that the payback directive constitutes an impermissible double recovery.

The Commission rejected petitioners' allegation of fact, relying in part on the testimony of witness Bathen.[58] Petitioners challenge the Commission's discussion of the Bathen testimony as a mischaracterization. It suffices to say that we have reviewed the evidence and find that, regardless of any mischaracterization, there is substantial evidence in the record taken as

---

**50.** 552 F.2d at 89.

**51.** 552 F.2d at 87; *see generally Louisiana Power & Light Co.,* 406 U.S. at 643–47, 92 S.Ct. at 1839–41; *Hercules Inc.,* 552 F.2d at 76–77.

**52.** 34 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,232, at 61,402; *see also* 8 Fed. Reg. Energy Comm'n Rep. (CCH) ¶ 61,120, at 61,444; 2 Fed. Reg. Energy Comm'n Rep. (CCH) ¶ 61,266, at 61,654.

**53.** *See Sebring Utils. Comm'n,* 591 F.2d at 1008, 1012–16; *Cities of Lakeland & Tallahassee & Gainesville, Regional Utils.,* 702 F.2d at 1307.

**54.** *Compare Sebring Utils. Comm'n,* 591 F.2d at 1007 (complaint charging undue discrimination "filed under Section 5(a) of the Natural Gas Act" (footnote omitted)), *with Louisiana Power & Light Co.,* 406 U.S. at 644, 92 S.Ct. at 1840 (a "prescribed remedial order [in a subsection 5(a) proceeding concerning an already filed curtailment plan tariff that enforces the substantive antidiscrimination mandate of subsection 4(b) ] can have only prospective application").

**55.** *Hercules Inc.,* 552 F.2d at 89.

**56.** *See In re Permian Basin Area Rate Cases,* 390 U.S. at 790, 88 S.Ct. at 1372; *Florida Power & Light Co.,* 598 F.2d at 379.

**57.** *See* Petitioners' Joint Initial Brief filed April 4, 1988, at 46 ("Petitioners agree with the Commission that, unlike *Hercules,* this extraordinary relief case was not for the purpose of testing the lawfulness of Florida Gas' Curtailment Tariff or for prescribing a new Curtailment Tariff"); *Fort Pierce Util. Auth.,* 526 F.2d at 999; *cf. United States Steel Corp.,* 533 F.2d at 1221; *Texas Gulf, Inc.,* 494 F.2d at 790, 792. In this connection, we note that extraordinary relief was granted upon a showing of need, not upon a showing of what gas allotment might have been under a revised curtailment plan. I Joint Appendix 2009–10.

**58.** 34 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,232, at 61,402.

a whole [59] to support the Commission's finding of fact.

### 7.

■ The Commission ordered monetary payback with interest.[60] Petitioners concede the discretionary power of the Commission to award prejudgment interest so-called,[61] but contend that the award in this case is an abuse of discretion. We reject this contention.

The Commission justified its award of prejudgment interest by reasoning that "not granting interest would be to deprive the Florida Cities of the opportunity cost of their respective monetary paybacks while providing a corresponding windfall to the special relief recipients." [62] As to the payback itself, the Commission has determined that the extraordinary relief granted petitioners should have been conditioned on an obligation to make monetary payback to the Cities throughout the 1970s while the Cities were incurring increased fuel costs. Given that determination, the Commission's award of prejudgment interest is eminently reasonable. Since petitioners did not in fact make payback at that earlier time, they have necessarily retained and had the use of the payback monies. Since the Cities did not in fact receive payback at that earlier time, they have necessarily been deprived of the use of the payback monies.[63] There was no abuse of discretion in awarding interest.

### 8.

■ Finally, petitioners contend that the rate of interest specified by the Commission is an abuse of discretion. We reject this contention.

Apparently lacking a regulation governing prejudgment interest on monetary payback, the Commission applied by analogy a regulation of general applicability [64] governing the method of computation for prejudgment interest on refunds of unjustified rates or charges.[65] Petitioners have not challenged the Commission's decision to apply this method of interest computation by analogy. Instead, petitioners argue that a different rate of interest should have been substituted into the computation.

Petitioners argue that the Cities could have borrowed to raise funds to pay for their increased fuel costs and that the rate of interest charged to borrowing municipalities should therefore be used for prejudgment interest purposes.[66] Petitioners' specification of a borrowing rate as the rate best suited to the instant circumstances ignores the Commission's rationale for prejudgment interest. As noted, prejudgment interest was justified on the grounds (1) that petitioners had use of payback monies that should earlier have been paid over to the Cities and (2) that the Cities were deprived of that same use of payback monies that should earlier have been received from petitioners. Thus, in their search for exact redress, petitioners might better urge that some combination of the rates of in-

**59.** See *Mississippi Valley Gas Co.,* 659 F.2d at 506; cf. *Castaneda v. Pickard,* 781 F.2d 456, 469 (5th Cir.1986).

**60.** 32 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,120, at 61,319; 34 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,232, at 61,402–03; 35 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,211, at 61,486–87; 41 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,122, at 61,302–03.

**61.** Petitioners' Joint Brief filed April 1, 1988, at 41; *see generally supra* note 28.

**62.** 34 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,232, at 61,402; *see also* 35 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,211, at 61,487 ("The purpose of requiring interest to be paid is to compensate for the time value of money that was lost by the Florida Cities as a result of

having to pay for oil that would not have been burned in their electric generation facilities but for the effect of the deliveries of relief").

**63.** See *United Gas Pipe Line Co.,* 657 F.2d at 794 ("demonstrat[ing]" that the same two considerations invoked here by the Commission to justify prejudgment interest "are appropriate objectives").

**64.** See *Shell Oil Co.,* 664 F.2d at 82.

**65.** 18 C.F.R. § 154.67(c).

**66.** Apparently, the Cities in fact raised these funds by imposing electricity rate increases upon electricity consumers. If a borrowing rate should control, perhaps it should be the rate of interest charged to borrowing consumers.

vestment return of the petitioners (or each of them) and of the Cities (or each of them) should govern.[67]

 Further Commission inquiry into such matters might result in a rate of prejudgment interest more closely tailored to the case at hand. Nevertheless, given the many variables, that result would necessarily remain an approximation, just as the rate of prejudgment interest now specified by the Commission is an approximation. A court may "decline" to impose a duty of more searching consideration upon the Commission when that duty would be burdensome and the likely benefit minimal.[68] The rate specified in the regulation at issue reflects reasoned consideration.[69] Further, the Commission's use of a single rate of prejudgment interest—generally without regard to the individual circumstances of the party paying and the party receiving the interest—accords with the universal practice. There was no abuse of discretion in the rate of interest specified.

### III. Conclusion

We have considered the remaining contentions of petitioners and have found them to be without merit. For the reasons assigned, the order of the Commission is

AFFIRMED.

---

**67.** Again, the rates of investment return of the Cities' electricity consumers might be more appropriate. *See supra* note 66.

**68.** *Cities of Lakeland & Tallahassee & Gainesville Regional Utils.*, 702 F.2d at 1310; *see Southern Cal. Edison Co.*, 524 F.2d at 416.

**69.** *See* 41 Fed. Energy Reg. Comm'n Rep. (CCH) ¶ 61,122, at 61,302; *United Gas Pipe Line Co.*, 657 F.2d at 795.